**In re Tharoll Jesse HINCKLEY and Judy Lynne Hinckley, Debtors.**

**Bankruptcy No. 83C–02026.**

United States Bankruptcy Court,
D. Utah.

May 17, 1984.

Randall D. Benson of Greene, Callister & Nebeker, Salt Lake City, Utah, for Chrysler Credit Corp.

Richard Calder, Salt Lake City, Utah, for debtors.

Judith A. Boulden, Salt Lake City, Utah, standing chapter 13 trustee.

GLEN E. CLARK, Bankruptcy Judge.

## CASE SUMMARY

In this case the court is asked to determine the requirement of adequate protection of an interest of a creditor holding a claim secured by a car during the period between the filing of a Chapter 13 petition and the effective date of a Chapter 13 plan.[1]

## FACTS AND PROCEDURAL POSTURE

On April 29, 1983, debtors, Tharoll and Judy Hinckley, bought a new 1983 Dodge Omni (the "property") for $8,183.00. That amount represents the value of the car on April 29. The instant these debtors drove the car off the dealer's lot, its value, according to the evidence, decreased by twenty percent of its value, that is, by $1,636.60. Between April 29, 1983 and July 29, 1983, the value of the car did not change.

On July 21, 1983, the debtors filed a petition under Chapter 13. On August 11, 1983, the court ordered that a meeting of creditors be held on September 2, 1983. At that meeting a paralegal, employed by counsel for Chrysler Credit Corporation ("CCC"), a secured creditor, asked debtors to adequately protect CCC's interest in the car and stated that CCC did not waive its right to adequate protection. Debtors did not respond.

Between July 29 and September 2, 1983, the value of the car decreased by $120.00.

Between September 2 and October 2, 1983, the car's value again decreased by $120.00. Through April of 1984, the car will continue to decrease in value by $120.00 per month. By that time, it is anticipated that debtors' plan will have been confirmed.

At all times relevant to this case, the debt owing to CCC has exceeded the value of the car.

On September 28, 1983, CCC filed its motion requesting the court to lift the automatic stay so that it could pursue its legal and equitable rights and remedies with respect to the property. In the alternative, CCC requested the court to condition the continued use of the property by the debtors pursuant to the automatic stay upon the debtors' providing CCC with adequate protection.

Objections to this motion were filed by the debtor and by the trustee of the bankruptcy estate.

A hearing was held on the motion and objections on October 25, 1983, at which time testimony and argument were presented.

On November 3, 1983, the court entered its order, but determined that it would also issue this memorandum opinion reiterating that order and setting forth its rationale for it.

## ISSUES

In this Chapter 13 case the court is called upon, first, to determine the date from which adequate protection must be provided by the debtors to a secured creditor, where the adequate protection is in the form of monthly cash payments in an amount sufficient to protect the creditor against the monthly depreciation in value of the automobile in which the creditor has a security interest. Second, the court is asked to suggest procedural guidelines which creditors may observe in order to obtain adequate protection against the depreciation of collateral in a Chapter 13 case.

## DECISION

(1)

■ From the moment of the filing of debtors' petition, lack of adequate protec-

---

1. This decision is expressly limited to Chapter 13 cases involving depreciating vehicles.

tion of the value of CCC's interest in debtors' car was a ground upon which the court could have granted relief from the automatic stay by terminating, annulling, modifying, or conditioning it.[2] Lack of adequate protection of the value of a lien may be shown by proving that the collateral is depreciating and that nothing protects against this decline in value. CCC's interest in the car in this case was declining in value from the date of debtors' petition forward. Nevertheless, because CCC did not request adequate protection of its interest until September 2, 1983, CCC is not now entitled to be paid $120.00 to cover the depreciation of its collateral that occurred prior to that date.

█ In making this ruling, the court has concluded that, although a requirement to adequately protect the value of liens is imposed on debtors in bankruptcy as a condition to the continuance of the automatic stay and as a condition to the use of secured collateral, creditors may waive their right to adequate protection. On facts such as these "[c]reditors should be encouraged to quickly pursue their available remedies and not to sit on their rights while the collateral diminishes in value." *In re Adams*, 2 B.R. 313 (Bkrtcy.M.D.Fla. 1980). Miller and Bienenstock explain why:

> If a request for adequate protection related back to the commencement of the case, then all creditors could wait until the eve of confirmation to request adequate protection. Each creditor would then argue that it is entitled to full compensation for any loss suffered due to the automatic stay from the commencement of the case and is entitled to a super priority claim under Code section 507(b) to the extent that the court awards it less than full compensation. Thus, under its plan, the debtor, absent acceptance of other treatment, would have to pay each creditor the value of its

collateral as of the effective date of the plan *plus* full compensation for any and all losses due to the automatic stay. That result is nowhere contemplated in the Code's legislative history and does not appear to have occurred in any Code cases.[3]

█ If requests for adequate protection do not relate back to the commencement of the case, the court must select another date from which the debtors must pay for the depreciation of a creditor's collateral. In this case, several dates were suggested by the parties: (1) the date of the meeting of creditors, (2) the date CCC filed its complaint seeking relief from the stay, and (3) the date of the hearing on that complaint.

█ Under the circumstances of this case, the court rejects the selection of the date of the filing of the complaint as the date from which debtors must pay for adequate protection on grounds that such a selection would simply increase the number of such filings, which would, in turn, multiply litigation.

The court also rejects the selection of the date of the hearing on the complaint on grounds that such a selection would unfairly advantage these debtors. This is so because the debtors made no attempt to dispute or negotiate the issue of adequate protection with CCC prior to the complaint hearing, at which time they argued that their filed but unconfirmed plan provided the requisite adequate protection. This argument the court rejected on grounds that a filed but unconfirmed plan in a Chapter 13 case, without more, is insufficient to provide adequate protection against monthly depreciation of the value of a car. This is true because the debtors may, at any time, dismiss their case, leaving CCC with

---

**2.** *See* 11 U.S.C. § 362(d); *In re Alyucan Interstate Corporation*, 12 B.R. 803 (Bkrtcy.D. Utah 1981); *In re South Village, Inc.*, 25 B.R. 987 (Bkrtcy.D. Utah 1982).

**3.** H. Miller, M. Bienenstock, ADEQUATE PROTECTION IN RESPECT OF THE USE, SALE OR LEASE OF PROPERTY, 127–128 (Dec.1983), published in course materials for the Southeastern Bankruptcy Law Institute Seminar, March 15–17, 1984, at pages J–133 to J–134.

an uncompensated decline in the value of its collateral.[4]

The selection of the date of the meeting of creditors as the date from which adequate protection must be paid, is, under the circumstances of this case appropriate, for it was at the meeting of creditors that these debtors were first informed of CCC's adequate protection demand. From that moment, with regard to the adequate protection issue, the debtors had an affirmative duty, at very least, either to advance their contrary good faith arguments or to enter into good faith negotiations with CCC. Had this been done at the meeting of creditors or at any time prior to the hearing on the complaint, then the complaint hearing date would have been the appropriate one from which to measure CCC's demand. This would have been true in order to allow the debtors time to assert a contrary but good faith position without penalizing them for doing so. But here, because the debtors simply ignored CCC's demand made at the meeting of creditors, then that meeting date is the appropriate one from which to measure the adequate protection requirement in this case.

Section 361 of Title 11, U.S.C., lists several nonexclusive alternatives for providing adequate protection. But the debtors in this case have offered no alternative for adequately protecting CCC's interest in the car.

Therefore, the court reiterating its oral ruling of November 3, 1983, orders that the continuance of the automatic stay and the debtors' continued use of the car be conditioned upon the payment by the debtors to CCC, on or before November 2, 1983, of $240.00 with the additional payment of $120.00 per month thereafter until the effective date of debtors' plan.[5]

### (2)

■ The court has also been asked to suggest some procedural guidelines which a creditor should observe in order to obtain adequate protection against the depreciation of collateral in a Chapter 13 case.

The standing trustee has informed the court that, in most cases, debtors and creditors are unable to agree on the amount of the cash payment necessary to keep abreast of depreciation. Without requiring parties to use any particular method of settling the issue of adequate protection against depreciation of cars in Chapter 13 cases, the court will make some observations.

If a creditor, with a lien on a car that constitutes property of a Chapter 13 estate, wants to be protected against a decline in the value of its collateral after the filing of the petition, the creditor should contact the debtor's attorney and make a request for adequate protection. This request might also be made before, during, or after the meeting of creditors. A request, however, must be made in good faith and must be reasonable. A request for cash payments to cover depreciation when the car is *not* depreciating would not be made in good faith. Likewise, a request for cash payments to cover depreciation when the car is worth far more than the creditor's allowed secured claim may be unreasonable where the excess value is sufficient to protect the creditor's interest.[6]

To be reasonable, a request for adequate protection whenever possible should be specific and should be supported by probative

---

**4.** *See* 11 U.S.C. § 1307(b); *In re Bedney,* Bankr. No. 81M–03243, unpublished transcript of oral ruling (Bkrtcy.D. Utah, Jan. 4, 1983).

**5.** Chapter 13 debtors in this district are required by local rule to make, between the meeting of creditors and the effective date of their confirmed plans, monthly payments to the standing trustee in an amount not less than the proposed payments under the plan. These interim payments, if made, help to show that the plan is feasible. Absent a contrary determination, administrative expenses have a prior claim on

interim payments in a Chapter 13 case. In this case, only one payment, in the amount of $147.00, has been made. Administrative expenses, mostly composed of the fees of debtors' attorney, exceed this amount. Thus, unless debtors' attorney is willing to subordinate his fees to a replacement lien in favor of CCC, debtors will be unable in this case to offer CCC a replacement lien on interim payments.

**6.** *See Alyucan, supra.*

evidence. A mere request for adequate protection, without more, ordinarily would not assist a debtor in determining what might be required. Indeed, if these debtors had disputed the good faith, the reasonability, or the evidentiary basis of the creditor's request in this case, the court would have found CCC's request to have been insufficient, and its motion for adequate protection would have been denied. Creditor's request must be specific and supported by good evidence. It is not sufficient, for example, for a creditor to send its representative to a meeting of creditors merely to demand debtors to pay, as adequate protection, a certain dollar amount per month. Creditors must support such a request with, for example, a properly sworn affidavit of a qualified appraiser, specifically stating the amount of the monthly depreciation. A naked demand for specific monthly cash payments, if unsubstantiated by admissible evidence, is as useless as a baseless request for specific monthly cash payments accompanied only by a gesture toward the contract payments, on the tenuous and unaccepted theory that the monthly contract payments are equal to the monthly depreciation value.

Under 11 U.S.C. § 362(g), debtors bear the burden of proving that the holder of a lien on a car is adequately protected. Thus, if the debtor does not come forward with credible, preponderating evidence of adequate protection, it would not be unreasonable for the court to hold that a reasonable and good faith request for adequate protection made by a creditor and supported by competent evidence would constitute *prima facie* evidence of the adequate protection to be required in the case.

Debtors are not entitled to a "free ride" in Chapter 13 cases at the expense of creditors. Thus, where a debtor's car is depreciating monthly, the debtor of whom a reasonable request for adequate protection is made should promptly comply or face losing the car. On the other hand, creditors are not entitled to more than adequate protection.

Demands for adequate protection must not only be predicated on good evidence and made in good faith, but must also be found reasonable under applicable statutory and case law. Debtors and creditors are encouraged to work privately to resolve adequate protection issues.