In re BEST PRODUCTS CO., INC., et al., Debtors.

Bankruptcy Nos. 91 B 10048 (TLB) to 91 B 10053 (TLB).

United States Bankruptcy Court, S.D. New York.

March 27, 1992.

Weil, Gotshal & Manges by Lori R. Fife, Kevin W. Barrett, New York City, for debtors.

Luskin & Stern by Michael Luskin, Lori Lapin Jones, New York City, for IBM Credit Corp.

Stroock & Stroock & Lavan by David Botter, New York City, for creditors committee.

MEMORANDUM DECISION ON MOTION OF IBM CREDIT CORPORATION FOR ADEQUATE PROTECTION

BURTON R. LIFLAND, Chief Judge.

This controversy involves the quest for a lump sum elevated priority adequate protection payment favoring a secured creditor pursuant to a motion brought substantially after the surrender and return of the collateral to the secured creditor.

## BACKGROUND [1]

On January 4, 1991 (the "Petition Date"), Best Products Co., Inc. ("Best") and certain of its affiliates (the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have remained in possession of their assets and have continued in the management and operation of their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. By order dated January 4, 1991, the Debtors' chapter 11 cases were procedurally consolidated.

IBM Credit Corporation ("IBM Credit") brought this motion under Code §§ 363(e) and 361 and Bankruptcy Rule 9014 seeking an order requiring Best to provide IBM Credit with adequate protection to compensate for the decline in value of collateral during a period measured from the Petition Date to August 1, 1991, the date that the collateral was voluntarily surrendered.

## FACTS

On September 10, 1986, International Business Machines Corporation ("IBM") and Best entered into an Agreement for the Purchase of IBM Machines (the "Purchase Agreement") and an Installment Payment Agreement (collectively, the "Agreements"). Under the Agreements, Best purchased a 3090–200 central processing unit and other related data processing equipment (collectively, the "Old Equipment"). The purchase price (the "Purchase Price") for the Old Equipment was $4,913,180 of which Best made a downpayment in the amount of $491,318. The balance, plus interest, was financed by a loan from IBM Credit, the proceeds of which were paid to IBM.

Under the Installment Payment Agreement, Best was required to make monthly

1. Pursuant to 28 U.S.C. § 455(b)(4) (1988), Judge Tina L. Brozman recused herself from hearing this motion. It was randomly reassigned to the undersigned.

payments in the amount of $94,670.54. To secure repayment of the Purchase Price, IBM reserved a purchase money security interest in the Equipment.[2] IBM's security interest in the Equipment was allegedly assigned to IBM Credit.[3] It has not been disputed that such security interest was properly perfected by the filing of a financing statement with the Secretary of State's office in Virginia.

As of the Petition Date, the principal balance due to IBM Credit from Best under the Agreements was $816,000. No payments were made to IBM Credit after the Petition Date.

Since the Petition Date, representatives of IBM, IBM Credit and Best began a series of discussions concerning the status of the Equipment. The first formal meeting between the parties took place in Virginia on March 5, 1991. Subsequent meetings took place on April 18 and May 31. During these meetings, the parties discussed Best's acquisition of an upgraded IBM data processing unit (the "New Equipment") as well as adequate protection for the decline in value on the Old Equipment.

Although the parties were unable to resolve the adequate protection issues, they were able to come to an agreement for the purchase of New Equipment which IBM Credit financed.[4] On or about August 1, 1991, IBM Credit installed the New Equipment at Best's offices in Virginia and since that date IBM Credit has recovered the Old Equipment. Thus, IBM Credit is now seeking adequate protection for collateral that it previously recovered.

It is undisputed that the Old Equipment declined in value between the Petition Date and the time it was recovered. IBM seeks payment of $495,000 for such postpetition diminution in value. However, there is no general agreement as to diminution amount. The Debtors insist that since IBM Credit failed to move for adequate protection prior to the time it recovered its collat-

eral, it is not entitled to adequate protection. Because the motion seeks the equivalent of super-priority claim status, the Creditors Committee (the "Committee"), perceiving a substantial stake in the outcome of the motion, has joined the Debtors in opposing the relief sought.

## DISCUSSION

IBM Credit makes several arguments in support of its position that it is entitled to adequate protection from the petition date rather than from the date of its adequate protection motion.

First, it asserts that the plain language of 11 U.S.C. § 363(e) (1988) resolves this dispute.

Section 363(e) states:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition use, sale, or lease as is necessary to provide adequate protection of such interest.

IBM Credit notes that § 363(e) provides that an adequate protection motion can be made "at any time" and suggests that by using the language "used, sold, or leased" Congress contemplated that parties could request adequate protection after property had been used, leased, sold, or even returned.

Second, IBM Credit asserts that there is a "general rule" in the Southern District of New York that a secured creditor is entitled to adequate protection from the petition date. For this proposition it relies principally on *Travelers Life and Annuity Co. v. Ritz–Carlton of D.C., Inc. (In re Ritz–Carlton, Inc.)*, 98 B.R. 170 (S.D.N.Y. 1989). In *Ritz–Carlton*, the collateral, continually used and possessed by the debtor, was deteriorating in value as a result of tax liens which accrued during the course

---

**2.** Installment Payment Agreement at p. 3.

**3.** Neither IBM nor IBM Credit has provided any evidence of this assignment, but such assignment will be assumed for purposes of this motion.

**4.** By order dated September 10, 1991, Judge Brozman approved this transaction.

of the chapter 11 case. The debtor did not discharge the liens. The court found that:

> The general rule is that for adequate protection purposes a secured creditor's position *as of the petition date* is entitled to adequate protection against deterioration. *See e.g., In re Datair Systems Corp.,* 42 B.R. 241, 243 (Bankr. N.D.Ill.1984); *Metropolitan Life Insurance v. Monroe,* 17 B.R. 934, 939 (D.Del. 1982). Those cases that have applied adequate protection from the motion date have addressed those circumstances where a creditor might have watched the property deteriorate only to surprise the debtor with a crippling demand for adequate protection on the eve of confirmation of a reorganization plan. *See e.g., In re Hinckley,* 40 B.R. 679, 681 (Bankr. D.Utah 1984); *In re Adams,* 2 B.R. 313 (Bankr.M.D.Fla.1980). The payment of taxes hardly fits that mold.

*Ritz–Carlton* at 173 (emphasis in original).

Finally, as a policy matter, IBM suggests that forcing secured creditors to file a motion to receive adequate protection will cause creditors to inundate the bankruptcy court with such motions at the beginning of a case and cause unnecessary litigation.

None of the points raised by IBM Credit is compelling. Section 363(e) provides that *"on request"* the court *"shall prohibit or condition"* the use, sale or lease of the collateral as is necessary to provide adequate protection. These phrases suggest that a secured creditor is entitled to adequate protection only upon motion and only prospectively from the time such protection is sought.

Bankruptcy Code § 363(c) reinforces this interpretation. Section 363(c)(1) permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." *See also In re Greives,* 81 B.R. 912, 965 (Bankr.N.D.Ind.1987). Only with respect to cash collateral is the burden placed on the debtor to seek authorization from the creditor or the court to use the collateral. *See* 11 U.S.C. § 363(c)(2) (1988). Thus, § 363(c) indicates that Congress intended to put the onus on the debtor when it seeks to use cash collateral and on the creditor when all other types of collateral are involved.

Next, as *Ritz–Carlton* notes, the caselaw on this issue is divided.[5] However, the only reported circuit court opinion to specifically address the point unequivocally holds that the motion date is the relevant date. In *Ahlers v. Norwest Bank,* the Eighth Circuit found that:

> the starting date should not be when the petition is filed, but rather when the secured creditor seeks either possession of the collateral or adequate protection.... this ruling will prevent a hardship to the debtor caused by an adequate protection motion filed well after the bankruptcy petition has been filed, which could require sizeable "makeup" payments. It is not unreasonable to require the creditor to be vigilant in requesting protection if it wants this protection.

794 F.2d 388, 395 n. 6 (8th Cir.1986) *rev'd on other grounds, Norwest Bank v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), *See also Grundy National Bank v. Tandem Mining Corp.,* 754 F.2d 1436, 1441 (4th Cir.1985). These comments are particularly apt here, where the creditor did not move for adequate protection until after it had recovered its collateral.

While *Ahlers* was the highest court to address this issue, it certainly was not the

---

**5.** Commentary on both sides of this debate can be found as well. *Compare* Martin J. Bienstock, *Bankruptcy Reorganization* p. 174–175, n. 32 (1987) ("A creditor's entitlement to a superpriority claim is for the deficiency in adequate protection given after time the creditor first requests adequate protection. The superpriority claim is not for deficiencies in adequate protection retroactive to the petition date. Otherwise, creditors would wait until confirmation and then demand a superpriority claim for all adequate protection it would have been entitled to in the entire case.") *with* David G. Carlson, *Time, Value, And the Rights of Secured Creditors in Bankruptcy, or When Does Adequate Protection Begin?,* J.Bankr.Law & Practice, Feb. 1992, at p. 149 (February 1992) ("A secured creditor should not have to ask for adequate protection in order to get it, in spite of the infelicitous words of section 363(e) ... A Trustee should not be given incentives to take advantage of secured creditors' acquiescence of their action. Nor should secured creditors be forced to file motions they do not necessarily support, just to signal to the court that they do not wish to be ripped off by a bankruptcy trustee.")

first. *Ahlers* simply echoed the reasoning of a host of prior lower court decisions. *See, e.g., In re Adams*, 2 B.R. 313, 314 (Bankr.M.D.Fla.1980) (secured creditor "should not be allowed to sit back and through his inaction compel the unsecured creditors to become insurers of any deficiency that may arise. The risk of decline in value should by placed on the security [sic] creditor himself, who is best able to anticipate the problem and protect his rights.") *In re Advisory Information and Management Systems, Inc.*, 50 B.R. 627, 629 (Bankr.M.D.Tenn.1985) ("The Bankruptcy Code nowhere puts the responsibility on the debtor to initiate consideration of adequate protection of a creditor's noncash collateral.") *In re Briggs Transportation Co.*, 47 B.R. 6, 8 (Bankr.D.Minn.1984) ("Congress intended to put the burden on the creditor to seek relief from the stay or otherwise demand adequate protection in order to receive adequate protection") *In re Northeast Chick Servs.*, 43 B.R. 326, 332 (Bankr.D.Mass.1984) (section 363(e) was never "intended as an 'after the fact' method allowing a creditor to obtain the full amount of its [prepetition] secured claim.") *In re Hinckley*, 40 B.R. 679, 681 (Bankr. D.Utah 1984) ("creditors should be encouraged to quickly pursue their available remedies and not sit on their rights while the collateral diminishes in value" (quoting *In re Adams*, 2 B.R. 313 (Bankr.M.D.Fla. 1980))).

Post–*Ahlers* cases have also followed the same reasoning. *See e.g., In re Greives*, 81 B.R. 912, 965 (Bankr.N.D.Ind.1987) ("there is imposed on … a secured creditor the obligation to be diligent in requesting adequate protection.") *In re Wilson*, 70 B.R. 46, 48 (Bankr.N.D.Ill.1987) ("requiring adequate protection to cover depreciation from the date that adequate protection is sought holds two benefits which are consistent throughout all such cases. First, the rule does not reward the creditor for inaction.... Second, this rule puts the debtor on notice at the time the creditor's motion is filed that at a future point in time the collateral will have to be relinquished or payments will have to be made.")

Thus, it is unclear how the *Ritz–Carlton* court determined that the "general rule" is that a secured creditor's position as of the petition date rather than the motion date controls for adequate protection purposes with so much authority supporting a contrary finding. In any event, the holding of *Ritz–Carlton* was not intended to be a blanket recognition of an entitlement to adequate protection from the petition date in all circumstances. Even if the *Ritz–Carlton* holding could be considered the rule of law for cases fitting a certain mold, this case clearly falls outside that mold. It is the classic situation in which a secured creditor stood idly by and "watched the property deteriorate only to surprise the Debtor" and the Committee with a claim for adequate protection after the collateral had been returned. *Ritz–Carlton* at 173.

By making a motion for adequate protection, a secured creditor demonstrates its concern and puts the debtor in a position where it must decide what it should do with collateral. The debtor is given the option to surrender the property to the entity that has made the request, and avoid providing adequate protection, or provide adequate protection to such entity for the debtor's continued use of the collateral. *See First State Bank v. Advisory Info. and Management Sys. (In re Advisory Information and Management Systems)*, 50 B.R. 627, 629 (Bankr.M.D.Tenn.1985). IBM Credit's attempt to obtain adequate protection following the Debtors' return of the collateral effectively denies the Debtors this choice. Had the Debtors been under the compulsion of a § 363(e) request for adequate protection while they continued to use the equipment, they may have opted to return or upgrade the Old Equipment, or the Committee might have encouraged the Debtors to act more expeditiously with respect to the Old Equipment.

Nothing precluded IBM Credit from seeking relief from the Court at an earlier point in time while the Debtors were using the collateral. It chose not to do so and instead negotiated over upgrading the Old Equipment. The mere fact that the negotiations included informal discussions relating to adequate protection factors is not a substitute for a § 363(e) motion.

Finally, the suggestion by IBM Credit that early adequate protection motions will result in a significant increase in litigation is without any merit whatsoever. This Court is well aware of the post-motion negotiation process which leads to both in-court and out-of-court resolution of adequate protection disputes. The mere filing of a motion will often do little more than put the matter on the table for the parties to resolve. Generally, it is in the early triage stages of a reorganization that parties seek to: establish their legal entitlement to adequate protection, promptly vindicate their rights, or preserve those rights for purposes of a negotiated settlement.

## CONCLUSION

Since it is undisputed that IBM Credit did not move to prohibit or condition the Debtors use of the Old Equipment prior to reacquiring possession of its collateral, IBM Credit is not entitled to adequate protection from the Debtors and its motion is denied.

IT SO ORDERED.