In the Matter of CONTINENTAL
AIRLINES, INC., et al.,
Debtors.

Bankruptcy Nos. 90–932 to 90–984.
Motion No. 92–258.

United States Bankruptcy Court,
D. Delaware.

April 16, 1993.

See also 154 B.R. 172.

Richard G. Elliott, Jr., Todd V. Jones, Richards, Layton & Finger, Wilmington, DE, Gary S. Jacobson, Kelley Drye & Warren, New York City, for NationsBank of Tennessee.

Kenneth B. Falk, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for National State Bank of Elizabeth, N.J.

David J. Askanase, Hughes, Watters & Askanase, Houston, TX, for Boatmen's First Nat. Bank of Oklahoma, N.A.

Linda Brower, Wolff & Samson, P.A., Roseland, NJ, for United Jersey Bank.

Zack A. Clement, Jill M. McCleary, Fulbright & Jaworski, L.L.P., Houston, TX, Laura Davis Jones, Young, Conaway, Stargatt & Taylor, Wilmington, DE, T. Jay Thompson, Gerald Laderman, Continental Airlines, Inc., Houston, TX, for debtors.

### *MEMORANDUM OPINION AND ORDER*

HELEN S. BALICK, Bankruptcy Judge.

This is the Court's decision on the Motions of NationsBank of Tennessee (NationsBank or Collateral Trustee), as successor Collateral Trustee under a certain Secured Equipment Indenture and Lease Agreement, dated March 15, 1987 (the Indenture), and the National State Bank of Elizabeth, New Jersey, Harris Trust and Savings Bank and Boatmen's First National Bank of Oklahoma, N.A., as successor First, Second and Third Priority Secured Equipment Certificates Trustees under the Indenture (collectively with NationsBank, the Trustees or Movants) for Relief from the Automatic Stay and for Adequate Protection for alleged decrease in the market value of the NationsBank collateral.

### NATURE AND STAGE OF PROCEEDINGS

The Movants act as trustees under the Indenture pursuant to which Continental Airlines, Inc. obtained $350 million in operating capital by causing to be issued and sold to the public three series of certificates, consisting of First, Second and Third Priority Secured Equipment Certificates. As security for repayment of the Certificates, Continental sold to the Collateral Trustee all of its right, title and interest in and to various aircraft and additional engines (the collateral).

On December 3, 1990 (Petition Date) Continental and its affiliates (Continental or Debtors) filed for relief from its creditors under Chapter 11 of the Bankruptcy Code and currently operate as debtors-in-possession under sections 1107 and 1108 of the Code. As of the petition date, the Trustees

were secured by 29 aircraft (with engines) and 77 additional jet engines.[1]

On February 21, 1991, the predecessor Collateral Trustee, First Fidelity Bank of New Jersey, N.A. (First Fidelity) joined in filing an Omnibus Motion for Order Compelling Payment of Administrative Rent, Granting Adequate Protection and Fixing Time for Assumption or Rejection of Unexpired Leases (Omnibus Motion). First Fidelity subsequently withdrew from the Omnibus Motion and, on June 28, 1991, filed its Joint Motion of Collateral Trustee and First, Second, and Third priority Secured Equipment Certificates Trustees under the $350 Million Secured Equipment Indenture for Adequate Protection. That motion was tried on September 3–6, 1991, along with adequate protection motions filed by Wilmington Trust Company and The Bank of New York (First Adequate Protection Hearing). The Court bifurcated the issues relating to the collateral's value and heard evidence regarding market value decline, deferring to a later date the issues of use and maintenance decline. On August 27, 1992, this Court issued a Memorandum Opinion and Order (August 27 Decision) in which it found that the Trustees were not entitled to adequate protection due to market value decline of the collateral.

On August 14, 1992 the Trustees filed a Motion for Relief from the Automatic Stay pursuant to § 362(d)(1) of the Bankruptcy Code for failure of adequate protection and pursuant to § 362(d)(2) of the Bankruptcy Code because the Debtor lacks equity in the collateral, and the collateral is not necessary for an effective reorganization. Subsequent to the Court's August 27 ruling, the Trustees moved by motion, dated September 14, 1992, for adequate protection for market value decline from July 1991 forward and for use and maintenance decline from the petition date forward (Renewed Adequate Protection Motion).

Wilmington Trust Company and Bank of New York also filed motions renewing their requests for adequate protection, and

the Court decided to hear the Renewed Adequate Protection Motions of all three parties simultaneously and to again limit the evidence to market value decline. Prior to the conclusion of the nine-day hearing which began on November 3, 1992 and concluded on February 5, 1993, Wilmington Trust Company and Bank of New York reached negotiated settlements with Continental and withdrew from the proceedings.

Several facts were stipulated to by Movants and Continental and are relevant to the motions at issue. First, the parties agreed that the NationsBank collateral is subject to a properly perfected security interest enforceable against Continental's estate. Second, the parties agreed that Continental has no equity in the collateral as contemplated by § 362(d)(2)(A) of the Bankruptcy Code. Finally, the parties stipulated to the authenticity and genuineness of the Avitas Blue Books, published from 1990 through 1992, as established by the testimony elicited at the deposition of Donald C. Benfell of Avitas authenticating these documents.

During the hearing, evidence was presented regarding the alleged decline in the market value of the NationsBank collateral and the necessity of that collateral to an effective reorganization of Continental. Following the hearing, the parties submitted post-trial briefs addressing the issues before the Court.

CONTENTIONS OF THE PARTIES

Movants assert that the doctrine of law of the case precludes this Court from deciding certain issues previously addressed in the Court's August 27, 1992 Decision. Thus, according to the Trustees, the Court is bound by its statement that "§ 363(e) implies that adequate protection may be sought [independent of a motion for relief from stay]". Movants also argue the Court's reliance on the January and July 1991 Avitas Blue Books and factual finding that the market value of the aircraft contained in NationsBank's collateral, as of approximately May 1991, was as stated in

---

1. Pursuant to Court orders, dated June 25, 1992 and October 6, 1992, Continental abandoned to the Trustees four airframes and eleven engines.

The Trustees seek adequate protection for the decline in value of this equipment through the date of its abandonment.

the July 1991 Blue Book[2], requires the Court to be bound by that finding in its determination of the present motions.

Second, the Trustees maintain that they are entitled to adequate protection because subsequent Avitas Blue Books indicate that the market value of NationsBank's collateral has seriously declined since May, 1991. It is Movants' position that the decline in the value of the collateral aircraft has actually been steeper than is shown in the Blue Books.

Movants also argue that the stay should be lifted because Debtors have no equity in the collateral, and the collateral is not necessary for an effective reorganization of Continental.

It is Continental's position that the Trustees are not entitled to any adequate protection for market value decline before August 14, 1992, the date the Trustees filed their Motion for Relief from the Automatic Stay, and only then if the collateral declined below petition date value. Continental contends any inference to the contrary in the Court's August 27 Decision is merely *dicta*, and therefore, the issue may be revisited by the Court.

Alternatively, Debtors argue that even if the market value issue was properly raised by Movants' first adequate protection motion, Movants are still only entitled to adequate protection if the collateral declined in market value to an amount less than its value on the petition date. According to Debtors, in either case, it is only relevant whether the collateral is worth more or less now than it was on December 3, 1990.

Additionally, Continental contends that the Court's reliance on the Avitas Blue Books in its August 27 Decision does not require the Court to rely on the Blue Books for purposes of the present motions.

Finally, Debtors argue that the collateral is necessary to its reorganization efforts because any precipitous removal of the collateral, affecting approximately one-third of its fleet, would have disastrous financial consequences to its reorganization efforts.

## DISCUSSION

Preliminary to any discussion of the merits of the Trustees' motions, is a determination of whether the doctrine of the law of the case affects the Court's determination of any of the issues raised by the present motions. Under the law of the case doctrine, when a rule of law is determined at one stage of a legal proceeding, that rule should govern subsequent stages of the same proceeding. *Al Haddad Bros. Enterprises, Inc. v. M/S Agapi*, 635 F.Supp. 205, 208 (D.Del.1986), *aff'd*, 813 F.2d 396 (3d Cir.1987) (citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir.1982). The doctrine is, however, "a rule that is subject to the discretion of the court applying it." *Coca-Cola Bottling Co. v. The Coca-Cola Co. (Diet Coke VIII)*, 988 F.2d 414, 429 (3d Cir. (Del.)). A court's "decision to invoke the law of the case doctrine is discretionary *only* if the doctrine actually applies to the issue before the court." *Id.* (*emphasis added*).

The first question to be addressed, therefore, is whether the Court determined in its August 27, 1992 Decision any issue presently before the Court regarding the necessity of filing a Motion for Relief from Stay in order to be entitled to adequate protection pursuant to § 362(d). In its August 27 Decision, the Court made the following statement:

> [T]he Court does not agree that adequate protection may only be sought in conjunction with a lift stay motion. While typically they are brought as alternatives, there is no such explicit requirement in the Code. In fact, the existence of section *363(e)* would imply that adequate protection may be sought independently (emphasis added).

*Matter of Continental Airlines, Inc.*, 146 B.R. 536, 540 (Bankr.D.Del.1992).

---

**2.** In its August 27, 1992 Decision, the Court recognized that the values listed in the Avitas Blue Books lag the market by two or three months. Thus, the July 1991 Blue Book reflects May 1991 values.

Section 363(e) provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, ... the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

Relying on the foregoing provision of § 363(e), this Court concluded that adequate protection may be sought under § 363(e) without filing a lift-stay motion.

The Court's August 27 Decision held that adequate protection may only be awarded from the date movants seek relief. In reaching its determination, the Court relied on the opinion of Chief Judge Lifland that a secured creditor can only receive adequate protection to the extent the collateral declined in value after the secured creditor filed its motion for adequate protection, rather than receiving compensation for all post-petition decline in value. *In re Best Products, Inc.,* 138 B.R. 155, 157 (Bankr. S.D.N.Y.1992). This Court did not, however, address the specific question of whether a party must file a lift-stay motion in order to receive relief pursuant to § 362(d)(1). Thus, in the instant case, the question remains whether it was necessary for Movants to request relief from the automatic stay in order to be entitled to adequate protection for market value decline caused by the automatic stay.

■ Section 361 of the Code defines adequate protection:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that *the stay under section 362 of this title, use, sale, or lease under section 363 of this title,* or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

In simple terms, § 361(1) provides that adequate protection is available in three contexts: 1) under § 362(d) when the imposition of the automatic stay results in a decrease in the value of an entity's interest in property; 2) under § 363(e) for a decrease in value due to the use, sale, or lease of an entity's interest in property; and 3) under § 364 when a lien is proposed to be granted on the interest of a holder of a previous lien on property.

For purposes of both the first and second adequate protection hearings, the parties agreed to bifurcate the issue of adequate protection for decline in the value of NationsBank's collateral due to use and maintenance factors from the question of adequate protection for market value decline under § 362.

■ Turning to § 362, the relevant provision states:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

Read together, sections 361(1) and 362(d)(1) provide that a party in interest shall be granted adequate protection *when the continuation of the automatic stay causes* that party to suffer a decrease in the value of its property interest. In other words, a party can be granted relief from the stay if his interest is not adequately protected; if that request for relief from the stay is not granted, and the value of the collateral is declining, adequate protection may be required. *United Savings v. Timbers of Inwood Forest,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Thus, the Code provides for adequate protection as alternative relief to the lifting of the stay pursuant to § 362(d). Accordingly, this Court finds that it is necessary to seek relief from the stay in order for the Court to grant relief either by lifting the stay *or* requiring adequate protection for the decline in the market value of the collateral

subsequent to the imposition of the stay. *In re Best Products Co., Inc.*, 138 B.R. at 155. (adequate protection is available to cover a decline in property's value from the time adequate protection is sought).

Based on the foregoing, the Court finds that since Movants did not file a Motion for Relief from Stay until August 14, 1992, Movants are only entitled to adequate protection for any decline in the market value of their collateral from August 14, 1992 forward.

During the nine-day trial, the Court heard credible expert testimony relating to the valuation of the collateral by John E. Luth, Chief Financial Officer of Continental, Donald C. Benfell, Editor of Avitas Blue Books, and Clive G. Medland of Simat, Helliesen & Eichner (SH & E). Although Mr. Luth, Mr. Benfell and Mr. Medland provided conflicting testimony as to the value of the collateral at various times during the pendency of Debtors' bankruptcy, their appraisals are similar with regard to value of the collateral in August, 1992. Moreover, the three experts are in agreement that there has been no substantial decline in the value of the collateral since August, 1992. Based on this evidence, the Court finds that Movants are not entitled to adequate protection for any decrease in the market value of their collateral. Conversely, since Movants do not suffer from lack of adequate protection under § 362(d), the Court will not grant their request for relief from the automatic stay pursuant to § 362(d)(1).

The remaining question to be addressed is whether Movants are entitled to relief from stay pursuant to § 362(d)(2) because Debtors have no equity in the collateral, and the collateral is not necessary for an effective reorganization. Based on the agreement between the parties that Debtors lack equity in the collateral, this Court need only determine whether the collateral is necessary for an effective reorganization of Continental. Debtors bear the burden of proof on this issue. *Timbers*, 484 U.S. at 376, 108 S.Ct. at 633.

The Trustees submit the expert opinion of David H. Treitel of SH & E regarding the necessity of the collateral to Continental's reorganization efforts. Mr. Treitel opines that the collateral is not necessary to a reorganized Continental for several reasons. First, there is an abundance of used aircraft and additional engines available for purchase or lease. Second, Mr. Treitel contends that the lack of profits in the airline industry reflects an excess seating capacity. Consequently, a return to profitability dictates a reduction in fleet requirements. Finally, Mr. Treitel maintains that federal legislation will require airlines to reduce the number of their aircraft of the collateral type (Stage II) by the end of 1994, and therefore, it would be practical for Continental to abandon the collateral in order to reduce the number of such aircraft in its fleet.

For its part, Continental contends it does not have the financial resources to presently abandon the collateral to the Trustees even if Continental were permitted to do so over a period of six months. According to Continental, substantial portions of the NationsBank collateral are integrated into its fleet, and any disruption to Continental's maintenance and operations programs would significantly impair its reorganization efforts. Debtors maintain that a precipitous reduction in its fleet and seat capacity would negatively impact public confidence and cripple its efforts to increase passenger revenues. Most significantly, Continental maintains that the orderly abandonment of the collateral over a period of time, in conformity with the its Reorganization Plan, is necessary to meet the financial requirements of the Air Partners/Air Canada Investment Agreement. According to the Debtors, the cash available to it at the time its reorganization is consummated will enable Continental to provide for an orderly abandonment and, if necessary, replacement of the collateral.

Although Mr. Treitel's testimony is credible as far as it goes, the Court finds that it does not adequately address the financial constraints of the Debtors. It is the Court's opinion, based on the evidence presented by the parties, that the Debtors

have met their burden of showing that the collateral is necessary for an effective reorganization because any disruption in Debtors' planned schedule of abandonment and replacement of the collateral would have a negative impact on the feasibility of the Continental Reorganization Plan. For this reason, the automatic stay will not be lifted.

CONCLUSION

Based on the foregoing determinations that 1) the Movants were not entitled to adequate protection for market value decline until they filed their lift-stay motion; 2) that the Movants are not entitled to adequate protection from August 14, 1992, to the present and 3) that the collateral is necessary for an effective reorganization of Continental, the Court finds it unnecessary to address the other contentions of the parties regarding the application of the law of the case doctrine and the value of the collateral.

By court-approved stipulation, the parties agreed that the Memorandum, Decision and Order of August 27, 1992 was to be given interim treatment. Having determined that adequate protection for market value decline cannot be provided absent a request for relief from stay, it was unnecessary for this Court to reach the valuation issue in its August 27, 1992 Decision.

An order in accordance with this Memorandum Opinion is attached.

ORDER

AND NOW, April 16, 1993, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. The Trustees' Motion for Relief from Stay is DENIED.
2. The Trustees' Motion for Adequate Protection is DENIED.