**In re WAVERLY TEXTILE PROCESSING, INC.,**
**Debtor.**

**Bankruptcy No. 97–33185–T.**
**CM No. 97–1441.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 10, 1997.

(3) Value of 1/2 carat diamond ring $600.
Debtor has also asked for return of the 1/2 carat diamond ring.

H. Slayton Dabney, Jr., Terri J. Keeley, McGuire, Woods, Battle & Boothe, LLP, Richmond, VA, for IPF.

Peter S. Partee, Edmund S. Whitson, III, Hunton & Williams, Richmond, VA, for Debtor.

· · Gregg R. Nivala, Asst. U.S. Trustee, Richmond, VA.

Kevin R. Huennekens, Maloney & Huennekens, Richmond, VA.

Bruce H. Matson, LeClair Ryan, Richmond, VA.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Bankruptcy Judge.

Imperial Premium Finance, Inc. ("IPF") financed the premiums for commercial insurance policies purchased by debtor in this bankruptcy case. As collateral for this loan, IPF took a security interest in the unearned premiums to which the insured would be entitled in the event the policies were canceled at any time before their expiration. Fearing the dissipation of its collateral as debtor continued to use up the insurance policies while not making installment pay-

ments on the loan, IPF filed with this court a motion for relief from the automatic stay or, in the alternative, adequate protection on September 12, 1997. On September 23, 1997, this court held an evidentiary hearing on IPF's motion. At the conclusion, the court denied the motion from the bench insofar as it sought relief from the automatic stay and issued an order to that effect on October 3, 1997. However, the court took the adequate protection issue under advisement. By letter to counsel dated October 2, 1997, this court ruled that the date of the filing of the motion was the appropriate date for valuing IPF's collateral. This court now holds that the "short rate" method is the appropriate method for valuing the collateral and adequate protection payments should be made accordingly.

### Facts

On May 6, 1997, debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Since the petition date, debtor has continued in possession and management of its property as debtor-in-possession. On September 12, 1997, IPF filed a motion seeking relief from the automatic stay pursuant to § 362(d)(1) of the bankruptcy code to terminate certain of debtor's commercial insurance policies and enforce IPF's security interest in the rebatable portion of the unearned premiums under those policies or, in the alternative, adequate protection of IPF's secured position. On September 23, 1997, this court conducted an evidentiary hearing on IPF's motion.

IPF financed premiums for commercial insurance policies purchased by debtor covering the period from February 1, 1997, through February 1, 1998. Those policies required premium payments in the aggregate amount of $117,318.18. IPF financed $93,146.00 of the aggregate premiums, and debtor made an initial payment of $24,172.18. Additionally, debtor borrowed $2,875.81 from IPF to cover finance charges on the premiums paid by IPF. As a result, IPF financed a

total of $96,021.81 for debtor. To repay the financing, debtor agreed to make nine installment payments of $10,669.09 to IPF on the first day of each month from March 1997 through November 1997, with a late charge of five percent whenever a payment became past due more than 10 days.

As collateral for the financing provided to debtor, IPF took an assignment of and a security interest in the unearned premiums under the insurance policies it financed pursuant to a "Premium Finance Agreement," dated January 30, 1997, by and between IPF and debtor. An unearned premium is the portion of a paid insurance premium which the insurance company must refund if a policy is canceled before its scheduled expiration date. At the time of IPF's motion on September 12, debtor had not made payments for August 1997 and September 1997, resulting in a past due amount of $22,425.08, inclusive of late charges and overdraft charges.[1] At the time of IPF's motion, the past due amount combined with the payments due on October 1, 1997, and November 1, 1997, resulted in a total claim by IPF against debtor of $43,763.26, plus any additional late charges, fees, or interest to which IPF is entitled.

The appropriate method for valuing IPF's collateral is the "short rate" method as opposed to the pro rata method. The industry practice and that of IPF is to use the "short rate" method in computing the value of unearned premiums when an insured cancels an insurance policy; IPF would be acting as the insured in canceling the debtor's policies. The value of IPF's collateral as of the date it filed its motion for relief is $36,368.64 using the short rate method.

On the date of IPF's motion, IPF's claim under the financing agreement exceeded the value of the secured collateral. As each day goes by, the unearned premiums decrease as debtor uses its commercial insurance. Accordingly, as the value of IPF's collateral continues to decrease, IPF has less protec-

---

1. While IPF presented no evidence at the hearing on September 23, 1997, regarding the amount of overdraft charges, evidence was offered regarding two past due payments and five percent late charges on each of those payments as of the date IPF filed its motion. IPF merely supplies a past due figure of $22,425.08 in its proposed findings.

According to this court's calculation, such a figure results from the two past due payments, plus five percent late charges, plus a twenty dollar overdraft charge. However, the exact figures do not affect the conclusion that IPF was clearly undersecured as of the date it filed its motion.

tion.[2] Additionally, it would take some time for IPF to effect a cancellation of the commercial insurance policies following default by debtor. During that period, premiums under the policies would continue to be earned, further reducing the value of IPF's collateral.

### Discussion and Conclusions of Law

■ IPF's claim under the financing agreement is secured by a properly perfected first priority security interest in and lien on the unearned premiums from debtor's commercial insurance policies financed by IPF. *See, e.g., In re RBS Industries, Inc.,* 67 B.R. 946 (Bankr.D.Conn.1986) (listing "a long line of judicial decisions which have held that a security interest can be created in unearned premiums"). Because IPF's claim against debtor exceeds the value of IPF's collateral as of the date of IPF's motion, and because the value of IPF's collateral continues to decrease, this court holds that IPF is entitled to adequate protection payments pursuant to § 363(e) of the bankruptcy code. This court further holds that the appropriate date for valuing IPF's collateral for purposes of computing adequate protection payments is the date IPF filed its motion for relief from stay or adequate protection. *See, e.g., In re Cason,* 190 B.R. 917, 928–31 (Bankr.N.D.Ala. 1995); *In re Continental Airlines, Inc.,* 146 B.R. 536, 539–40 (Bankr.D.Del.1992); *In re Best Products Co., Inc.,* 138 B.R. 155 (Bankr. S.D.N.Y.1992). Additionally, this court holds, based on the only evidence offered at the hearing on September 23, 1997, that the "short rate" method is the appropriate method for valuing IPF's collateral. Adequate protection payments should be made accordingly.

### I. Date for Valuation

■ Section 363(e) of the bankruptcy code provides that "on request of an entity that has an interest in property used ... by the trustee, the court, with or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection.... " Courts remain divided on whether the petition date or the motion date is the appropriate date for valuing collateral for adequate protection purposes. *Compare In re Best Products Co., Inc.,* 138 B.R. 155 (Bankr.S.D.N.Y.1992) *with In re Craddock–Terry Shoe Corp.,* 98 B.R. 250 (Bankr. W.D.Va.1988). This court is persuaded that Chief Judge Lifland expressed the better view in *Best.* First, the language "on request" in § 363(e) strongly suggests that a secured creditor is entitled to adequate protection only upon a motion and only prospectively from the time protection is sought. 138 B.R. at 157. Moreover, valuing collateral as of the petition date for adequate protection purposes would reward inaction by secured creditors and subject reorganizing debtors to potentially crippling demands for "make-up" payments late in a case. *Id.; see also, e.g., In re Continental Airlines,* 146 B.R. at 540. *But see, e.g., In re Craddock–Terry Shoe Corp.,* 98 B.R. at 255; *In re Ritz–Carlton of D.C., Inc.,* 98 B.R. 170, 173 (S.D.N.Y.1989). It is worth noting that the only U.S. Court of Appeals to address this issue, the Eighth Circuit, indicates that the motion date is the date from which a creditor is entitled to adequate protection payments. *Ahlers v. Norwest Bank Worthington, N.A.,* 794 F.2d 388, 395 & n. 6 (8th Cir.1986), *rev'd on other grounds sub nom., Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).[3] Accordingly, this court holds that the date IPF filed its motion, September 12, 1997, and not the petition date, is the proper date for valuing IPF's collateral for adequate protection purposes.

---

**2.** Both IPF and the debtor use a pro rata figure of approximately $321.41 as the daily dissipation of unearned premiums. However, a pro rata figure is arguably inconsistent with the short rate computations presented by IPF's witness at the September 23, 1997, hearing. Whether this court computes adequate protection payments using some multiple of this pro rata figure or by some other approximation of the collateral's lost value is immaterial. IPF is adequately protected in this case if the payments equal the total dissipation in the collateral's value from the date of IPF's motion to the end of the policy terms.

**3.** *Cf. Grundy Nat'l Bank v. Tandem Mining Corp.,* 754 F.2d 1436, 1441 (4th Cir.1985) (holding, *inter alia,* that interest on periodic adequate protection payments "should not begin any earlier than the time that the creditor petitions for relief from the automatic stay").

## II. *Method of Valuation*

■ The "short rate" method is the appropriate method for calculating the value of IPF's collateral, i.e., the amount of the unearned premium on a particular date. The short rate method produces a value arrived at by multiplying the total premium by a standard factor based upon insurance industry data.[4] Applying the short rate method here, the value of IPF's collateral on September 12, 1997, equaled $36,368.64.

In its proposed findings of fact submitted to the court, IPF seeks a valuation of $45,025.69 using the "pro rata" method. The pro rata method provides an unearned premium value based upon the premium remaining on a daily basis. In this case, total premiums of $117,318.18 divided by 365 days in the policy terms yields a daily dissipation of approximately $321.41.

However, a pro rata valuation contradicts the testimony of IPF's own witness, an IPF employee.[5] IPF's witness testified that he would use the short rate method on behalf of IPF, and further that the short rate method was the industry standard when an insured cancels a policy. He indicated that a cancellation by IPF would be treated as a cancellation by the insured. Therefore, the court concludes from the only evidence at the hearing that IPF's collateral should be valued using the witness' short rate figure for September 12, 1997, of $36,368.64.[6]

## III. *Adequate Protection Payments*

■ In order to adequately protect IPF from the dissipation of the September 12, 1997, value of its collateral the following payments will be required of debtor to IPF. First, debtor must pay IPF $16,368.64 as adequate protection within three days of the entry of this court's order. Second, debtor must make two monthly payments of $10,-000.00 as adequate protection to IPF on or before December 1, 1997, and January 1, 1998. These payments, equal to the dollar value of IPF's collateral on the date it filed its motion for relief, adequately protect IPF from the complete dissipation of the value of its collateral during the course of the policy terms.

■ Delay is apparently inherent in the process of terminating the commercial insurance policies upon default by debtor. Accordingly, if debtor does not timely comply with the provision of adequate protection payments ordered by this court within three days of the due dates provided, IPF will be granted immediate relief from the automatic stay pursuant to § 362(a) of the bankruptcy code, without further order, notice, or hearing before this court, to seek cancellation of debtor's commercial insurance policies and exercise any other rights supplied by the financing agreement or state law.

The court makes no findings or conclusions regarding IPF's entitlement to attorney's fees, interest payments, a superpriority administrative claim, or any other matter not specifically addressed in this opinion.

A separate adequate protection order will be entered.

### *ORDER*

Hearing was held September 23, 1997 on creditor Imperial Premium Financing, Inc.'s motion for relief from the automatic stay or, in the alternative adequate protection. At the conclusion the court ruled from the bench that the motion for relief from the automatic stay would be denied and subsequently entered an order to that effect on October 3, 1997. The court took the adequate protection issue under advisement. The court now grants IPF's motion for adequate protection and for the reasons stated in the accompanying memorandum opinion,

---

4. According to IPF's witness, the unearned premium on a date certain is calculated by using a "Roneco Wheel" which reflects dates, months, and factors.

5. In a letter to the court dated October 23, 1997, IPF's counsel, apparently in an effort to explain its inconsistent position, claimed that at the conclusion of the hearing the evidence showed that only the insurance company could declare which method it would use. However, this court has no evidence before it of the insurance company's position. Therefore, this court will rule based on the only evidence that was presented, i.e., the industry standard according to IPF's employee.

6. Not only does the valuation urged by IPF in its proposed findings contradict its own witness, but the valuation now urged by IPF also exceeds its claim as of the date of the motion, suggesting at the very least that IPF was not undersecured when it filed its motion.

IT IS ORDERED that IPF's motion for adequate protection is GRANTED.

IT IS FURTHER ORDERED that debtor shall pay $16,368.64 to IPF within three days of the entry of this order.

IT IS FURTHER ORDERED that debtor shall pay $10,000.00 to IPF on or before December 1, 1997.

IT IS FURTHER ORDERED that debtor shall pay a second payment of $10,000.00 to IPF on or before January 1, 1998.

IT IS FURTHER ORDERED that these adequate protection payments shall be made unless a plan of reorganization providing for a different payment schedule is confirmed before a payment's due date.

IT IS FURTHER ORDERED that if debtor does not make the payments outlined in this order within three days of the due dates, IPF is granted relief from the automatic stay without further order, notice, or hearing before this court to seek cancellation of debtor's commercial insurance policies and exercise any other rights supplied by the financing agreement or state law.