896 F.Supp. 152 (1995)
BLUEBIRD PARTNERS, L.P., Plaintiff,
v.
FIRST FIDELITY BANK, et al., Defendants.
BLUEBIRD PARTNERS, L.P., Plaintiff,
v.
UNITED JERSEY BANK, et al., Defendants.
Nos. 94 Civ. 654 (MBM), 94 Civ. 2978 (MBM).
United States District Court, S.D. New York.
August 23, 1995.
*153 David M. Friedman, Paul M. O'Connor III, Kasowitz, Hoff, Benson & Torres, New York City, and Jerome Kowalski, and Howard Schub, Kowalski & Schub, New York City, for plaintiff.
Edward Yodowitz, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant Midlantic National Bank.
Andrew J. Levander, Shereff, Friedman, Hoffman & Goodman, New York City, for defendant Wolff & Samson, P.A.
Marc Wolinsky, Wachtell, Lipton, Rosen & Katz, New York City, for defendant NationsBank of Tennessee.
Rory O. Milson, Cravath, Swaine & Moore, New York City, for defendant Riker, Danzig, Scherer, Hyland & Perretti.
Lawrence E. Miller, LeBoeuf, Lamb, Greene & Macrae, New York City, for defendant First Fidelity Bank, N.A.
Lester M. Kirschenbaum, Kaye, Scholer, Fierman, Hays & Handler, New York City, Attorneys for defendant United Jersey Bank.
Thomas W. Hyland, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendant Wilentz, Goldman & Spitzer.
Michael J. Malone, Battle Fowler, New York City, for defendant Crummy, Del Deo, Dolan, Griffinger & Vecchione, P.C.
Craig Murphy, Windels, Marx, Davies & Ives, New York City, for defendants Constellation Bank and CoreStates New Jersey National Bank.
Robert Ehrenbard, Kelley, Drye & Warren, New York City, pro se.
MUKASEY, District Judge.
Plaintiff Bluebird Partners, L.P., a secondary purchaser of interests in an equipment trust created to facilitate secured financing for Continental Airlines, Inc., sues the indenture trustees for violations of the Trust Indenture Act ("TIA"), 15 U.S.C. § 77aaa et seq., and state law. Plaintiff alleges that defendant trustees First Fidelity Bank, N.A., New Jersey ("First Fidelity"), Midlantic National Bank ("Midlantic"), United Jersey Bank ("UJB"), NationsBank of Tennessee, N.A. ("NationsBank"), Constellation Bank, and CoreStates New Jersey National Bank ("CoreStates"), breached the prudent person standard imposed by TIA § 315(c), 15 U.S.C. § 77ooo(c), by failing to act in a timely, reasonable and prudent manner to protect the interests of the certificate holders. Plaintiff charges defendant law firms Riker, Danzig, Scherer, Hyland & Perretti, Crummy, Del Deo, Dolan, Griffinger & Vecchione, P.C., Wolff & Samson, P.A., Kelley, Drye & Warren, and Wilentz, Goldman & Spitzer with malpractice and negligence for allegedly failing to advise their trustee clients to take steps necessary to protect plaintiff's interests.
Defendants move to dismiss plaintiff's two related complaints pursuant to Fed.R.Civ.P. 12(b)(1), because plaintiff lacks standing to pursue its claim under the TIA, and pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that plaintiff's TIA and state law claims are meritless. Because under federal law, TIA actions do not run with the affected security, plaintiff, as a subsequent purchaser of the equipment certificates, lacks standing to assert its federal claims, and accordingly, the complaints are dismissed.

I.
In 1987, Continental Airlines entered into a Secured Equipment Indenture and Lease Agreement (the "indenture") with First Fidelity, Midlantic, UJB, and The First Jersey National Bank ("First Jersey"). Pursuant to *154 the indenture, Continental issued three series of bonds (the "certificates") with declining rights of priority to payment, secured by aircraft, jet engines, and related equipment. (Bluebird I Compl. ¶¶ 9-10)[1] Trustees were appointed to protect the specific interests of the investors in each series: defendants Midlantic and UJB served as first and second series trustees, respectively, and First Jersey served as third series trustee. (Id. at ¶ 9) Defendant First Fidelity, as "Collateral Trustee," obtained title to the collateral and leased it back to Continental, which made lease payments to satisfy the principal and interest owed to the certificate holders. (Id. at ¶ 10) Defendant NationsBank succeeded First Fidelity as collateral trustee. Defendant Constellation Bank, which was acquired by defendant CoreStates, succeeded Midlantic as first series trustee. (Bluebird II Compl. ¶¶ 3-5) All trustees retained counsel to help them represent the interests of the certificate holders. (Bluebird I Compl. ¶¶ 20-21; Bluebird II Compl. ¶¶ 26, 37, 42)
Plaintiff purchased first series certificates with a face amount in excess of $60 million on January 27, 1994, and second series certificates with a face amount in excess of $20 million between January 27 and February 24, 1994. (Bluebird I Compl. ¶ 11; Wolinsky Decl. Ex. B) These purchases were made in the secondary market "from a number of related and other entities that had purchased these Certificates at varying amounts at various times." (Bluebird I Compl. ¶ 11) Plaintiff commenced the first of these consolidated actions on February 2, 1994, less than one week after it bought the first series certificates. (Pl. Mem. Opp'n at 18)
Continental filed for bankruptcy on December 3, 1990. (Bluebird I Compl. ¶ 15) At that time, the value of the collateral was either less than or approximately equal to the amount of outstanding principal and interest owed to the certificate holders, but the value plummeted in the ensuing months. (Id. at ¶ 18) Plaintiff alleges that defendant trustees and their counsel knew or should have known that the value of the collateral was declining, but nevertheless did not act expeditiously to protect the interests of the certificate holders. (Id. at ¶¶ 16, 19)
On February 21, 1991, First Fidelity joined an omnibus motion filed by other secured parties seeking what is called adequate protection under § 363(e) of the Bankruptcy Code (the "Code"). Adequate protection compensates the secured creditor for the diminution in value of the collateral during the period in which the automatic stay prevents the creditor from repossessing the collateral. See 11 U.S.C. § 361. The motion did not request relief from the automatic stay. (Id. at 23; Wolinsky Decl. Ex. E) First Fidelity subsequently withdrew from the omnibus motion and filed an independent motion on June 28, 1991 with the three series trustees, seeking adequate protection pursuant to § 362(d)(1) and § 363(e). (Bluebird I Compl. ¶ 24) Although the trustees invoked § 362(d) as a statutory basis for relief, once again, they did not seek to lift the automatic stay in order to take possession of the collateral. (Id.; Wolinsky Decl. Ex. H at 7) In opposition to this motion, Continental argued that adequate protection was unavailable because defendants failed to file a simultaneous motion to lift the automatic stay. (Bluebird I Compl. ¶ 25)
Following a hearing, Bankruptcy Judge Helen S. Balick ruled on August 27, 1992 that adequate protection was available only from the date on which movants sought relief, and only to the extent of the decline in collateral from that time. In re Continental Airlines, Inc., 146 B.R. 536, 539 (Bankr. D.Del.1992) (hereinafter "Continental I"). Because the Court found there was no decrease in the value of the collateral after defendants filed their motion, they were not entitled to adequate protection. Id. at 542. The Bankruptcy Court concluded further that contrary to Continental's position, adequate protection may be sought independent of a motion to lift the automatic stay. Id. at 540.
*155 On August 14, 1992, while the original motion for adequate protection was still pending, NationsBank, as successor collateral trustee for First Fidelity, filed a motion under § 362 of the Code to lift the automatic stay on behalf of all the trustees. (Bluebird I Compl. ¶ 29) One month later, the trustees filed a renewed adequate protection motion for the decline in collateral value during the period since the first adequate protection motion was denied. (Id. at ¶ 32) On April 16, 1993, Bankruptcy Judge Balick held that adequate protection was unavailable absent a motion to lift the automatic stay. In re Continental Airlines, Inc., 154 B.R. 176, 180 (Bankr.D.Del.1993) (hereinafter "Continental II"). Because defendants did not pursue relief from the stay until August 14, 1992, they were entitled to adequate protection only from that date forward. The Court found there was no substantial decline in collateral value during that period, and accordingly, all relief was denied. Id. at 181.
Plaintiff claims that because the collateral deteriorated at some point during the post-petition period, the certificate holders would have been entitled to adequate protection if defendants had filed a timely motion to lift the automatic stay. (Bluebird I. Compl. ¶ 33) Even if the motion had been denied, plaintiffs argue, they would have benefitted from the effort because the denial would have entitled them to a superpriority claim under § 507(b) of the Code. (Pl. Mem. Opp'n at 3) Instead, plaintiff received a bankruptcy distribution insufficient to satisfy the full amount due on the first series certificates, and any of the debt owed on the second series certificates. (Bluebird I Compl. ¶ 37)
Plaintiff asserts six claims against defendants, all arising from their alleged failure to act timely on behalf of the certificate holders: first, plaintiff contends defendant trustees violated TIA § 315(c), 15 U.S.C. § 77ooo(c), which required them to exercise the rights and powers of the certificate holders with the same degree of prudence they would use in handling their own affairs (Id. at ¶¶ 39-43); second, they allege defendant trustees breached the fiduciary duty owed to the certificate holders under the indenture agreement (Id. at ¶¶ 44-47); third, plaintiff asserts defendant trustees breached provisions in the indenture agreement imposing the same prudent person standard required under the TIA (Id. at ¶¶ 48-50); fourth, plaintiff asserts trustee defendants acted negligently (Id. at ¶¶ 51-53); and finally, the fifth and sixth claims charge defendant law firms with malpractice and negligence for failing to provide adequate legal advice. (Id. at ¶¶ 54-68)
All defendants respond with a motion to dismiss both complaints pursuant to Rule 12(b)(1) on the ground that plaintiff, as a secondary purchaser of the certificates, has no standing to prosecute its TIA claim because plaintiff did not own the certificates at the time the alleged wrong occurred, and because claims under federal securities laws do not automatically travel with the security upon sale. (Defs. Mem. Supp. at 2) Defendants move also to dismiss the complaints pursuant to Rule 12(b)(6), arguing they cannot be held liable on the basis of Bankruptcy Judge Balick's allegedly erroneous ruling in Continental II, which required a secured creditor to file a lift stay motion as a prerequisite to obtaining adequate protection. Defendants argue they should not have been expected to anticipate or act in accordance with a "requirement" that finds no support in the Bankruptcy Code. (Id. at 3) However, Bankruptcy Judge Balick's ruling and the potential responsibilities this ruling imposed on defendants need not be treated here. For the reasons set forth below, plaintiff lacks standing to bring its only federal claim, and accordingly, defendants' motion to dismiss the complaints pursuant to Rule 12(b)(1) is granted.

II.
Plaintiff does not contend it received an express assignment of existing causes of action from the previous owners of the certificates; rather, plaintiff alleges it has standing to assert its claim under the TIA because upon purchasing the certificates, it automatically acquired its claims for relief. (Pl. Mem. Opp'n at 34) In order to ascertain whether federal claims attach automatically to subsequent purchasers of securities, it is first necessary to determine the applicable law. Precedent, policy, and predictability all militate *156 in favor of applying federal law to resolve the question of assignability of federal claims.
Existing authority holds that federal common law, not state law, determines whether federal claims run with the affected security. See In re Nucorp Energy Sec. Litig., 772 F.2d 1486, 1489 (9th Cir.1985) (assignability of claims arising under the TIA should be decided under federal law); Lowry v. Baltimore & Ohio R.R. Co., 707 F.2d 721, 727 (3rd Cir.) (en banc) (Garth, J., concurring) ("questions regarding rights under the federal securities laws must be decided on the basis of federal, and not state law"), cert. denied, 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983); In re Saxon Sec. Litig., 644 F.Supp. 465, 473-74 (S.D.N.Y.1985) (same); cf. Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 437 (3rd Cir.1993) ("the validity of the assignment of an antitrust claim is a matter of federal common law"). These decisions seem to recognize that the policy of protecting investors that underlies federal securities laws such as the TIA is best served by applying a uniform federal rule to measure the validity of certain claims. Congress replaced the existing patchwork of state laws with a unitary scheme of federal regulation. To preserve this scheme and promote the goal of protecting investors, it is necessary that the availability of remedies for breach of the securities laws remains consistent throughout the nation. Lowry, 707 F.2d at 727. Further, uniformity enhances predictability, which in turn heightens the protection of aggrieved investors. "Confusion and uncertainty" would result if investors' rights under the federal securities acts were to depend on varying state laws. Id.
Under federal law, claims for violations of securities laws do not automatically travel with the security upon its sale. Nucorp, 772 F.2d at 1490; Lowry, 707 F.2d at 729; Saxon, 644 F.Supp. at 471; Soderberg v. Gens, 652 F.Supp. 560, 563-64 (N.D.Ill.1987); Independent Investor Protective League v. Saunders, 64 F.R.D. 564, 572 (E.D.Pa.1974); International Ladies' Garment Workers' Union v. Shields & Co., 209 F.Supp. 145, 149 (S.D.N.Y.1962); but see Phelan v. Middle States Oil Corp., 154 F.2d 978, 1001 (2d Cir.1946) (claim ran with bonds in receivership case in order to promote goal of protecting integrity of federal receivers). Plaintiff argues this rule of non-transferability is inapplicable here because these cases involved misrepresentation claims under the TIA and the Securities and Exchange Acts, whereas plaintiff's claim is predicated on TIA provisions prohibiting breaches of contract and fiduciary duty. Misrepresentation, unlike plaintiff's claims, requires proof of reliance. Plaintiff contends the personal reliance element required in misrepresentation claims has prompted courts to rule against automatic transfer of claims to subsequent purchasers who did not own the affected securities at the time of the alleged wrongdoing, and therefore could not have relied on the misrepresentations. (Pl. Mem. Opp'n at 41-44)
Plaintiff's observation is correct, but its analysis is misguided. In rejecting automatic assignment, these Courts were concerned with restricting the right to sue to those who actually suffered the injury. Reliance was cited merely as an indication of injury, not as the basis for the holding. See e.g. Nucorp, 772 F.2d at 1490 (assigning TIA claim to remote purchasers who did not rely on misrepresentation strips the remedy from those who were defrauded); Lowry, 707 F.2d at 729 (availability of Rule 10b-5 action should be limited to investors who were defrauded and thereby injured); Soderberg, 652 F.Supp. at 564 (right to bring § 10(b) action remains with injured party who purchased security in reliance on fraud). Thus, the proper inquiry for determining the transferability of claims upon sale of a security is whether the subsequent purchaser was injured by the misconduct. If so, that purchaser acquired not only the security, but also standing to pursue existing claims.
The injury flowing from the breaches of contract and fiduciary duty alleged here is not as discrete as the damage inflicted by a one-time misrepresentation. The alleged breaches occurred over time, throughout the course of Continental's bankruptcy, and any resulting injury was gradual, increasing as the collateral declined in value. The question of which investors were injured, and *157 when that injury was inflicted, is a thorny one, but need not be resolved here because it is clear that plaintiff was not among the injured. Plaintiff purchased its certificates after all the alleged breaches transpired, after Bankruptcy Judge Balick rejected defendants' motion for adequate protection a second time, after the reorganization plan had been confirmed, and after the adverse consequences to certificate holders became painfully apparent. Market forces assured that the price plaintiff paid for certificates which would never be wholly redeemed reflected their diminished value. The injury was sustained by the sellers who parted with these certificates at a reduced price, not by plaintiff who purchased them at their post-bankruptcy value. See Saxon, 644 F.Supp. at 470 (investors who purchased bonds after wrongdoing was revealed paid market price adjusted for the fraud). Within one week after purchasing the certificates, plaintiff filed its first complaint against defendants. The securities laws were enacted to protect those who have been injured, id. at 475, not treasure hunters "shrewd or lucky enough to have put [their] hands on a security that once belonged to a person who was defrauded." Saunders, 64 F.R.D. at 572.

* * *
Because plaintiff suffered no injury, it does not have standing to prosecute its TIA claim, the only basis for subject matter jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The court may retain jurisdiction over the pendent state-law claims of negligence, malpractice and breaches of contract and fiduciary duty, if such jurisdiction is justified by judicial economy, convenience and fairness to the litigants. Hagans v. Lavine, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974). These concerns are not implicated here, as the litigation has not progressed significantly past the pleading stage, the court has no special familiarity with the facts and circumstances underlying this case, and the parties can be heard in state court. Accordingly, defendants' motion pursuant to Rule 12(b)(1) is granted, and the complaints are dismissed.
SO ORDERED.
NOTES
[1] Citations to "Bluebird I Compl." refer to the Amended and Supplemental Complaint filed in Bluebird Partners, L.P. v. First Fidelity Bank, N.A., 94 Civ. 654, and citations to "Bluebird II Compl." indicate the Complaint submitted in Bluebird Partners, L.P. v. United Jersey Bank, 94 Civ. 2978.