**BLUEBIRD PARTNERS, L.P.,**
Plaintiff–Appellant,

v.

**FIRST FIDELITY BANK, N.A. NEW JERSEY; Midlantic National Bank; Riker, Danzig, Scherer, Hyland & Perretti; Crummy, Del Deo, Dolan, Griffinger & Vecchione, P.C.; United Jersey Bank; NationsBank of Tennessee; Constellation Bank, N.A.; CoreStates New Jersey National Bank; Wolff & Samson, P.A.; Kelley Drye & Warren; Wilentz, Goldman & Spitzer, P.C., Defendants–Appellees.**

Nos. 1122, 1123, Dockets 95–7891, 95–7893.

United States Court of Appeals,
Second Circuit.

Argued March 15, 1996.

Decided June 4, 1996.

David M. Friedman, New York City (Kasowitz, Hoff, Benson, Torres & Friedman, L.L.P., Martin P. Russo, of counsel), for Plaintiff–Appellant.

Edward J. Yodowitz, New York City (Skadden, Arps, Slate, Meagher & Flom, of counsel), for Defendant–Appellee Midlantic Bank.

Robert Baron, New York City (Cravath, Swaine & Moore, Rory O. Millson, of counsel), for Defendant–Appellee Riker, Danzig, Scherer, Hyland & Perretti.

LeBoeuf, Lamb, Greene & MacRae, LLP, New York City (Lawrence E. Miller, of coun-sel), for Defendant–Appellee First Fidelity Bank, N.A.

Battle Fowler, LLP, New York City (Michael J. Malone, Steven B. Carlin, Paul A. Straus, of counsel), for Defendant–Appellee Crummy, Del Deo, Dolan, Griffinger & Vec-chione, P.C.

Shereff, Friedman, Hoffman & Goodman, LLP, New York City (Andrew J. Levander, of counsel), for Defendant–Appellee Wolff & Samson, P.A.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Lester M. Kirschenbaum, of counsel), for Defendant–Appellee United Jersey Bank.

Wachtell, Lipton, Rosen & Katz, New York City (Marc Wolinsky, of counsel), for Defendant–Appellee NationsBank of Tennessee.

Kelley, Drye & Warren, New York City, pro se (Steven P. Caley, of counsel).

Windels, Marx, Davies & Ives, New York City (Craig Murphy, of counsel), for Defendants–Appellees Constellation Bank, N.A. and CoreStates New Jersey National Bank.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Thomas W. Hyland, of counsel), for Defendant–Appellee Wilentz, Goldman & Spitzer, P.C.

Before: FEINBERG, WALKER and PARKER, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Bluebird Partners, L.P. (Bluebird) appeals from an order of the United States District Court for the Southern District of New York, Michael B. Mukasey, J., dismissing, pursuant to Fed.R.Civ.P. 12(b)(1), its action against defendants under the Trust Indenture Act, 15 U.S.C. § 77aaa et seq. (frequently referred to hereafter as the Act). The district court held that Bluebird lacked standing because a bondholder's claim under the Act against an indenture trustee is not automatically assigned to a subsequent purchaser of the bond—here Bluebird—as a matter of law. *Bluebird Partners, L.P. v. First Fidelity Bank,* 896 F.Supp. 152, 153 (S.D.N.Y.1995). Although this question has been raised elsewhere, apparently this is a

case of first impression in this circuit. We agree with the reasoning of the district court and affirm.

## I. Background

In March 1987, Continental Airlines, Inc. (Continental) issued three series of bonds (the Bonds) secured by a pool of used jet aircraft and engines owned by Continental. The Bonds were issued under an indenture agreement (the Indenture) that is governed by New York law. Defendants-appellees First Fidelity Bank, N.A. New Jersey, Midlantic National Bank, United Jersey Bank, NationsBank of Tennessee, Constellation Bank, N.A. and CoreStates New Jersey National Bank (the Trustees) are or were at one time trustees under the Indenture. The remaining defendants-appellees are law firms that represented the Trustees.[1]

In December 1990, Continental filed for bankruptcy protection, which constituted an event of default under the Indenture. Thereafter, three of the Trustees filed a motion for "adequate protection" under § 363(e) of the Bankruptcy Code (the Code).[2] 11 U.S.C. § 363(e). Generally, the right to adequate protection allows a secured creditor or its representative to propose a method of protecting its interest against the diminution in value of the security during a bankruptcy proceeding. 11 U.S.C. §§ 361–364. The Trustees' motion did not seek to lift the

automatic stay that had been imposed under § 362 of the Code upon Continental's bankruptcy filing. Bankruptcy Judge Balick of the United States Bankruptcy Court for the District of Delaware denied the Trustees' motion, holding that there had been no decline in the value of the security from January 1991 through July 1991, although there had been a decline before the motion was filed.[3] *In re Continental Airlines,* 146 B.R. 536, 542 (Bankr.D.Del.1992). The bankruptcy judge, however, rejected the argument that the motion was improper because there had been no motion to lift the stay. *Id.* at 540.

In August 1992 the Trustees filed a motion to lift the stay, and in September 1992 the Trustees again moved for adequate protection, this time pursuant to § 362(d) of the Code. 11 U.S.C. § 362(d). Judge Balick held in April 1993 that a party seeking adequate protection under § 362(d) of the Code must file a motion to lift the automatic stay. She then denied both the motion to lift the automatic stay and the motion for adequate protection. *In re Continental Airlines,* 154 B.R. 176, 180–81 (Bankr.D.Del.1993). The same day, Continental's plan of reorganization was confirmed.[4]

Judge Mukasey found that Bluebird purchased the Bonds at a discount after Continental emerged from bankruptcy.[5] Bluebird

---

**1.** Bluebird filed two complaints, one against First Fidelity Bank and Midlantic National Bank and their counsel, and the other against the remaining defendants. For convenience, we treat the two complaints as one.

**2.** Bluebird claims that these Trustees did not file the motion until June 1991, six months after Continental filed for bankruptcy. The Trustees allege that First Fidelity Bank joined in an omnibus motion for adequate protection in February 1991, but withdrew from that motion and filed a separate motion with two additional Trustees on June 28. Apparently the bankruptcy court considered the separate motion as filed as of February 1991. See *In re Continental Airlines,* 146 B.R. 536, 542 (Bankr.D.Del.1992).

**3.** The bankruptcy court concluded that the decline in value had "most likely" taken place prior to Continental's bankruptcy petition. 146 B.R. at 542.

**4.** The Trustees thereafter appealed to the United States District Court for the District of Delaware.

That court dismissed the Trustees' appeal as moot on the ground that the plan of reorganization had already been consummated. *In re Continental Airlines, Inc.,* No. 93–195–JJF, at 4 (D.Del. Dec. 30, 1993). We are informed that the judgment of the district court was affirmed in February 1996 by the United States Court of Appeals for the Third Circuit, but that thereafter that court vacated the decision and reheard the appeal in banc last month.

**5.** Bluebird states that it is a partnership that purchased the Bonds from related entities. Allegedly these related entities began purchasing the Bonds "in December 1991, *while* the bankruptcy was still pending and *while* the Trustees were continuing to fail in their duties to protect the Collateral." Bluebird alleges that "[t]he District Court's factual finding that [Bluebird] purchased these bonds on January 27, 1994, shortly before commencing this action" was based on an improperly submitted document. In its complaint, Bluebird states only that it "purchased these Certificates at varying amounts at various

now owns in excess of $80 million face value of the Bonds. Soon after Bluebird purchased the Bonds, it commenced this action.

Bluebird contends that the Trustees failed to take the proper procedural steps to obtain adequate protection of the collateral securing the Bonds. Bluebird's complaint against defendants alleges breach of the Trust Indenture Act, which provides:

> The indenture trustee shall exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

15 U.S.C. § 77ooo(c). Bluebird's complaint also contains various state law claims against the Trustees and the law firm defendants.

Judge Mukasey held that because Bluebird purchased the Bonds after Continental's bankruptcy proceeding, it suffered no injury and therefore did not have standing to assert a claim under the Trust Indenture Act. The judge also held that under federal law, the claims of the previous bondholders under the Act were not automatically assigned to Bluebird upon its purchase of the Bonds. The court therefore dismissed Bluebird's claims under the Act. The district court also declined to exert jurisdiction over the remaining state law claims.

Bluebird then appealed to this court.

## II. Discussion

■ Bluebird must plead facts showing that it has standing to assert its claim. *FW/ PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990). In order to have standing, a party must allege "a distinct and palpable injury to himself," *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), and "cannot rest his claim to relief on the legal rights or interests of third parties," *id.* at 499, 95 S.Ct. at 2205. Bluebird purchased the Bonds at a discount in 1994 after the acts that form the basis of its complaint took place. It is clear then that Bluebird itself was not injured by those acts. However, Bluebird argues to us that the claims of the previous owners of the Bonds were automatically transferred to it when it acquired the Bonds. Bluebird contends that (1) New York's law of automatic assignment[6] applies to a claim arising under the Trust Indenture Act and (2) if federal law applies, federal law should require automatic assignment. We reject these arguments and hold that (1) federal law controls and (2) a claim arising under the Act is not automatically assigned to a subsequent purchaser.

### A. Federal law applies.

■ The federal courts have consistently determined that federal law governs the assignability of claims under the federal securities laws. See, e.g., *In re Nucorp Energy Securities Litig.,* 772 F.2d 1486, 1489 (9th Cir.1985) (Trust Indenture Act); *Lowry v. Baltimore & O. R.R.,* 707 F.2d 721, 727 (3d Cir.) (in banc) (Garth, J., concurring) (Securities Exchange Act), cert. denied, 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983); *Huddleston v. Herman & MacLean,* 640 F.2d 534, 557 & n. 40 (5th Cir.1981) (same), rev'd on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *In re Saxon Securities Litig.,* 644 F.Supp. 465, 473–74 & n. 16 (S.D.N.Y.1985) (same); see also *Drachman v. Harvey,* 453 F.2d 722, 727 (2d Cir.1971) (applying federal law to determine standing to bring a shareholder derivative action under the Securities Exchange Act),

---

times." In any event, Bluebird does not argue that it suffered any injury from the Trustees' actions, but relies only on the argument that the claims of the previous bondholders were automatically assigned to it.

6. New York General Obligations Law § 13–107(1) provides:

Unless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferor, whether or not such claims or demands are known to exist, ... for damages against the trustee or depository under any indenture under which such bond was issued or outstanding....

New York Uniform Commercial Code § 8–301(1) provides:

Upon transfer of a security to a purchaser ... the purchaser acquires the rights in the security which his transferor had or had actual authority to convey....

rev'd on other grounds, 453 F.2d at 736 (in banc); cf. *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 1000–01 (2d Cir.1946) (applying federal law to determine assignability of bondholder's claims against a federal receiver).

■ The Trust Indenture Act was enacted because previous abuses by indenture trustees had adversely affected "the national public interest and the interest of investors in notes, bonds [and] debentures," 15 U.S.C. § 77bbb(a), and Congress sought to address this national problem in a uniform way, S.Rep. No. 248, 76th Cong., 1st Sess. 3 (1939). The Act is "designed to vindicate a *federal* policy of protecting investors." *Nucorp*, 772 F.2d at 1489 (internal citations omitted) (emphasis added). Applying state law would mean that this federal statute could be interpreted differently in all 50 states. In *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 623 F.2d 290 (3d Cir. 1980), cert. denied, 456 U.S. 1005, 102 S.Ct. 2295, 73 L.Ed.2d 1299 (1982), which established a private cause of action under the Act, the Third Circuit pointed out:

> It is hard to believe that Congress would have established uniform standards to govern indentures and then paradoxically have allowed the application of those standards to depend on the law of the state of the suit. The interpretation of the indenture provisions mandated by the Act does not depend on ordinary contract principles—the intent of the parties—but depends on an interpretation of the legislation. It would be contrary to the purposes of the Act to have the trustee held to certain standards in one state court and potentially different standards in another.

*Id.* at 299 (footnote omitted). We agree with those observations.

Bluebird emphasizes that the choice of law provision in the Indenture states that New York law governs its interpretation. But we do not have to interpret the Indenture (and thus apply New York law) to decide whether a federal claim under the Act is automatically assigned to a subsequent purchaser. See *Nucorp*, 772 F.2d at 1489.

**B. Claims under the Act are not automatically assigned.**

■ Applying federal law, the courts have held that federal securities law claims are not automatically assigned to a subsequent purchaser upon the sale of the underlying security. See *Nucorp*, 772 F.2d at 1490 (Trust Indenture Act); *Lowry*, 707 F.2d at 729 (Garth, J., concurring) (Securities Exchange Act); *Soderberg v. Gens*, 652 F.Supp. 560, 563–64 (N.D.Ill.1987) (Securities Exchange Act and Investment Advisers Act); *Saxon*, 644 F.Supp. at 474 (Securities Exchange Act); *Independent Investor Protective League v. Saunders*, 64 F.R.D. 564, 572 (E.D.Pa.1974) (Trust Indenture Act); but see *Lowry*, 707 F.2d at 740–43 (Gibbons, J., dissenting); *id.* at 747 (Seitz, J., dissenting). We see no persuasive reason to disagree with these cases and impose a rule of automatic assignment here. Bluebird presents a parade of horribles growing out of rejection of their proposal of automatic assignment. But the weight of authority has been the other way for some time, and we are unaware of any significant adverse consequences.

We recognize that the question of assignability of claims under the Trust Indenture Act is a substantial one, and we do not suggest this is an open and shut case. There are respectable arguments on both sides of the issue. Compare David C. Profilet, Note, *Express Versus Automatic Assignment of Section 10(b) Causes of Action*, 1985 Duke L.J. 813 (1985) with William K.S. Wang, *Is a Seller's Rule 10b–5 Cause of Action Automatically Transferred to the Buyer?*, 1988 Colum.Bus.L.Rev. 129 (1988). However, the policy underlying the Act is contrary to a rule of automatic assignment. The Act creates a uniform scheme of federal regulation to protect those who are injured, see 15 U.S.C. § 77bbb, including those who have sold their securities at a reduced price after the Act has been violated, not those who subsequently purchase securities at the reduced price.

Bluebird argues that under a rule of automatic assignment, the market would compensate injured investors because the price for these bonds would adjust to reflect the value of the claims attached to them. Since the

courts that have addressed this issue have usually held that claims under the securities acts are not automatically assigned, it is at least questionable how the markets would react to a contrary decision of this court. Additionally, bonds subject to the Act generally are traded on public exchanges, not in face-to-face transactions, making it difficult for an ordinary investor to contract out of a rule of automatic assignment. Such a rule would thus require injured investors to retain their securities in order to preserve their claims under the Act.

Bluebird cites this court's decision half a century ago in *Phelan* in support of a federal rule of automatic assignment. In that case, we held that a purchaser of a bond automatically obtained the right to sue a federal receiver for the receiver's failure to make full disclosure to bondholders. In *Phelan*, however, it is clear that the court was primarily concerned with ensuring the integrity of a court-appointed receiver, 154 F.2d at 1001, and the case has been limited to that context. See *Lowry*, 707 F.2d at 730; Saxon, 644 F.Supp. at 472. We agree with Judge Garth in *Lowry* that:

> *Phelan* did not involve an action under the federal securities laws, but instead was a receivership case. The court based its decision that the claim there asserted ran with the bonds on the belief that a wrongdoing trustee should not be relieved of liability if a bondholder, unaware of the trustee's malfeasance, sells his bonds.

*Lowry*, 707 F.2d at 730.

Bluebird's reliance on *Leverso v. South-Trust Bank*, 18 F.3d 1527 (11th Cir.1994), is similarly misplaced. *Leverso* was a straight contract case which held that a settlement agreement that treated bonds differently was contrary to the terms of the trust indenture; the parties did not rely on the Trust Indenture Act. *Id.* at 1529. Moreover, the court expressly declined to rule on whether bondholders who purchased after default received an automatic assignment of claims because no objections were made as to the standing of such bondholders. *Id.* at 1533 n. 9.

Finally, to the extent that Bluebird asserts a claim under the Act against the law firm defendants, this claim is based on alle-gations that the law firms acted as agents of the Trustees. Because Bluebird does not have standing to assert a claim under the Act against the Trustees, it cannot assert such a claim against the law firm defendants. Bluebird's remaining claims are all based upon state law. The district court decided not to retain jurisdiction over these pendent claims, and we cannot say that this was an abuse of discretion.

We have considered all of Bluebird's arguments regarding standing and find them without merit. Accordingly, we affirm the judgment of the district court.