OPINION OF THE COURT
 

 Rosenblatt, J.
 

 This appeal involves the proper interpretation of General Obligations Law § 13-107. That section provides that in the absence of an express writing to the contrary, a bond transfer vests in the transferee certain bond-related claims of the transferor, whether or not those claims were known to exist at the time of transfer. The question before us is whether, before pursuing any such claim, a transferee-plaintiff must demonstrate
 
 its own
 
 injury in addition to any harm the transferor sustained prior to the sale. Because the Appellate Division erroneously inserted such a requirement into the statute, we reverse and remit the matter for further proceedings consistent with this Opinion.
 

 
 *459
 
 I.
 

 In March 1987, Continental Airlines and four defendant trustees entered into a Secured Equipment Indenture and Lease Agreement, pursuant to which Continental issued a $350 million debt offering secured by collateral in the form of jet aircraft and spare engines. The offering consisted of three series of certificates, with first series holders having priority over the second series holders, who in turn had priority over the third series holders. The holders of each series were represented by a separate trustee, and another trustee monitored the overall interest in the collateral.
 

 In December 1990, Continental filed for chapter 11 bankruptcy protection. At the time, the outstanding obligation on the certificates was over $180 million. As a result of a decline in the value of the collateral, the trustees sought “adequate protection” payments under section 363 (e) of the Bankruptcy Code (11 USC § 363 [e]) and later sought to lift the automatic stay
 
 (see
 
 11 USC § 362). The Bankruptcy Court denied the trustees’ motions
 
 (see Matter of Continental Airlines,
 
 Inc., 146 BR 536 [Bankr D Del 1992];
 
 Matter of Continental Airlines, Inc.,
 
 154 BR 176 [Bankr D Del 1993]).
 

 In December 1991, Gabriel Capital, an investment-related limited partnership and predecessor to plaintiff Bluebird Partners, began accumulating Continental’s first series certificates. In all, Gabriel and its affiliates acquired some $70 million worth of first series certificates for approximately $26 million, a discount that reflected Continental’s financial woes.
 

 In January 1994, Gabriel formed Bluebird and transferred to it all of the Continental first series certificates. Further, between January 1994 and June 1996, Bluebird purchased an additional $40,295,000 worth of Continental second series certificates, presumably to improve its litigation position and make a profit
 
 (see Bluebird Partners v First Fid. Bank,
 
 94 NY2d 726, 737-738 [2000]). Bluebird paid only $644,625 for these certificates.
 

 In February 1994, Bluebird commenced the first of several actions. In that complaint, brought in the United States District Court for the Southern District of New York, Bluebird asserted that the trustees breached their fiduciary duty under state law and under the Trust Indenture Act of 1939 (15 USC § 77aaa
 
 et seq.
 
 [TIA]) by failing to protect the value of the collateral during the bankruptcy proceedings. The District Court dismissed Bluebird’s complaint, ruling that with respect to
 
 *460
 
 claims asserted under the TIA, a bond transfer does not carry with it the rights of the transferor (including the right to sue an indenture trustee)
 
 (Bluebird Partners, L.P. v First Fid. Bank,
 
 896 F Supp 152, 156-157 [SD NY 1995],
 
 affd
 
 85 F3d 970 [2d Cir 1996]). The court determined that Bluebird lacked standing to sue because, having acquired the bonds at a reduced price after the bankruptcy and alleged breach, it was not injured. Further, the court declined to exercise pendent jurisdiction over Bluebird’s state law claims.
 

 In March 1997, Bluebird commenced the instant action against the trustees and their respective law firms. Relying on General Obligations Law § 13-107, Bluebird asserted that the trustees’ delay in moving for adequate protection and in failing to move to lift the automatic stay constituted fiduciary dereliction. United Jersey Bank (UJB), one of the trustees, moved to dismiss the complaint contending that Bluebird’s acquisitions were champertous. Supreme Court denied the motion, but the Appellate Division reversed on champerty grounds and dismissed Bluebird’s complaint against UJB.
 

 Based on the Appellate Division’s decision, Supreme Court awarded summary judgment to the other trustees. However, in concluding that the champerty allegations raised questions of fact, this Court subsequently reversed the Appellate Division’s grant of summary judgment to UJB and reinstated Bluebird’s complaint
 
 (Bluebird Partners v First Fid. Bank,
 
 94 NY2d at 738-739). Following our decision, Supreme Court granted Bluebird’s motion for reargument and denied the trustees’ motions for summary judgment, enabling Bluebird to pursue its claim that the trustees violated their fiduciary duty. The trustees appealed from Supreme Court’s decision.
 

 The Appellate Division reversed and dismissed Bluebird’s complaint (279 AD2d 239 [2001]). The court held that General Obligations Law § 13-107 requires that a transferee demonstrate its own injury in order to recover damages and because Bluebird failed to do so, it could not sue the trustees. We now reverse.
 

 II.
 

 Contrary to the conclusion reached by the Appellate Division, neither the plain language nor the legislative history of General Obligations Law § 13-107 requires that a transferee demonstrate its own injury in order to bring a claim for damages. Initially, as in all cases requiring statutory construction, we begin with an examination of the statute’s plain mean
 
 *461
 
 ing (see
 
 Palmer v Van Santvoord,
 
 153 NY 612, 615-616 [1897];
 
 see also Majewski v Broadalbin-Perth Cent. School Dist.,
 
 91 NY2d 577, 583 [1998]). General Obligations Law § 13-107 states, in relevant part: “Unless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferrer [sic], whether or not such claims or demands are known to exist, * * * (b) for damages against the trustee or depositary under any indenture under which such bond was issued or outstanding.” (Subd [1].)
 

 The wording of General Obligations Law § 13-107 makes it eminently clear that the buyer of a bond receives exactly the same “claims or demands” as the seller held before the transfer. Had the Legislature sought to impose on the buyer any precondition to suit (such as the independent injury requirement interposed by the Appellate Division) it well could have done so. As the statute reads, however, there is no such requirement. Gabriel had standing to sue the trustees before it sold the bonds to Bluebird. General Obligations Law § 13-107 provides that Bluebird, as buyer of those bonds, acquired Gabriel’s rights, including the right to sue the trustees.
 

 The legislative history of General Obligations Law § 13-107 supports this conclusion. The Legislature adopted the predecessor to General Obligations Law § 13-107 in 1950 to effect a major change in New York law. Before that, a transfer of bonds did not automatically carry with it existing claims for damages against a trustee; an express agreement was required to transfer those claims
 
 (see Smith v Continental Bank & Trust Co.,
 
 292 NY 275 [1944]). In enacting the new law, the Legislature sought to bring New York in line with other jurisdictions, including the federal courts, which contemplated the automatic transfer of rights
 
 (see
 
 1950 Report of NY Law Rev Commn;
 
 Phelan v Middle States Oil Corp.,
 
 154 F2d 978 [2d Cir 1946]).
 
 *
 
 Nowhere in the legislative history is there any mention of a requirement that the transferee itself sustain
 
 *462
 
 injury as a prerequisite to suit. Given this history, we conclude that the Legislature intended that under General Obligations Law § 13-107 transferees such as Bluebird be allowed to assert the claims that the transferor could have asserted, whether or not the transferees themselves suffered any actual injuries.
 

 III.
 

 The trustees concede that, contrary to the Appellate Division holding, General Obligations Law § 13-107 does not require plaintiffs to assert any injury independent of the injury to the previous bondholder. They nevertheless argue that they should be granted summary judgment for two other reasons. First, they assert that General Obligations Law § 13-101 directs that General Obligations Law § 13-107 be interpreted to conform to the Trust Indenture Act, and thereby reflect the federal “public policy” of having the claims remain with the bond seller. Second, they argue that the TIA preempts General Obligations Law § 13-107.
 

 The Appellate Division did not address either of these arguments and we decline to decide them in the first instance. In light of our conclusion that a transferee need not demonstrate its own injury to invoke General Obligations Law § 13-107, we remit the matter to the Appellate Division for its consideration of those two issues and any other issue raised but not decided below.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division, First Department, for further proceedings in accordance with this Opinion.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order reversed, etc.
 

 *
 

 Federal courts in the last 50 years have declined to apply
 
 Phelan’s
 
 automatic assignment of claims rule outside the context of “ensuring the integrity of a court-appointed receiver”
 
 (Bluebird Partners, L.P. v First Fid. Bank,
 
 85 F3d 970, 975 [2d Cir 1996]). Those courts no longer treat claims as automatically assigned to buyers of bonds (see
 
 id.
 
 at 974-975). Thus, New York’s attempt to bring its rule into conformity with other jurisdictions has ironically achieved the opposite result. Whether New York wants to make another attempt at conforming its rule to other jurisdictions or retain it in its present form is a decision for the Legislature. General Obligations Law § 13-107 automatically transfers rights to the buyers of bonds and, absent preemption by federal law, we must give effect to that statute’s language.