**DESIGN STRATEGIES, INC., Plaintiff,**

v.

**Marc E. DAVIS, Info Technologies, Inc., Info Technologies Web Solutions, Inc., and John Goullet, Defendants.**

**No. 02 Civ. 5329(VM).**

United States District Court, S.D. New York.

Jan. 21, 2005.

**716**

Jack S. Dweck, Dweck Law Firm, LLP, New York City, for plaintiff.

Leonard Benowich, Roosevelt, Benowich & Lewis, L.L.P., White Plains, NY, for Marc E. Davis, Design Strategy, Inc.

R. Scott Garley, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York City, for Info Technologies, Inc., Info Technologies Web Solutions, Inc., John Goullet.

### DECISION AND ORDER

MARRERO, District Judge.

Defendants Marc E. Davis ("Davis"), Info Technologies, Inc., Info Technologies Web Solutions, and John Goullet (collectively the "IT Defendants," and together with Davis, "Defendants") have moved *in limine* for an order precluding Plaintiff Design Strategies, Inc. ("Design") from asserting or presenting evidence concerning damages allegedly arising from the failure of a proposed sale of Design stock to non-party COMSYS Information Technology Services, Inc. ("COMSYS") (the "COMSYS Sale"). For the reasons stated below, the Court grants Defendants' motions.

### I. BACKGROUND

The Court addressed many of the facts and issues involved in this case in its Decision and Order granting in part and denying in part Defendants' and Plaintiff's cross-motions for summary judgment.[1] Accordingly, those matters will not be reiterated here, except to explain the factual basis for the instant motions The terms of the proposed COMSYS Sale are set forth in a letter, dated January 27, 2000 (the "Letter of Intent" or the "Letter"), addressed to the shareholders of Design and Network Integration Services, Inc. ("NISI"), a company affiliated with Design, from COMSYS and Michael T. Wills, its Chairman, Chief Executive Officer, and President.

Design alleges that Davis's departure from Design caused the proposed COMSYS Sale to fail because it resulted in Design not being awarded a contract for an "e-business solutions project" called Contentville. Davis and the IT Defendants argue that Design should be precluded from presenting evidence on this issue on the grounds, *inter alia*, that Design lacks standing to assert any claim that may arise from the failure of the COMSYS Sale.

### II. DISCUSSION

Defendants argue that Design lacks standing to assert such a claim because the Letter of Intent identifies only Design's

---

1. The Court's Decision and Order setting forth the facts and claims involved in this case is reported as *Design Strategies, Inc. v. Davis,* No. 02 Civ. 5329(VM), 2004 WL 1394327 (S.D.N.Y. June 22, 2004).

shareholders, and not Design itself in its corporate capacity, as the proposed sellers of the relevant stock, whereas Design, rather than the Design and NISI shareholders, is the sole plaintiff in the instant action. The Letter of Intent is addressed to "the Shareholders of Design Strategy Corporation and Network Integration Services, Inc." and describes the transaction at issue as "the sale by the shareholders of Design Strategy (the 'Sellers') of all of his, her, its or their shares of Common Stock of Design Strategy." (Letter of Intent at 1, Ex. L to Affidavit of Patrick V. DiDomenico, dated November 5, 2004, ("DiDomenico Aff.").) The Letter of Intent does not mention any sale of Design's corporate assets nor does it indicate that the corporation itself was a proposed seller of the shares in question.

"[I]t is axiomatic that a corporation is ... separate and distinct ... from its owners" and that a shareholder "is not the corporation either in law or fact." *Boise Cascade Corp. v. Wheeler*, 419 F.Supp. 98, 102 (S.D.N.Y.1976), *aff'd*, 556 F.2d 554 (2d Cir.1977) (internal quotation marks and citations omitted). It is also well settled that, "[i]n order to have standing, a party must allege 'a distinct and palpable injury to himself,' and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey*, 85 F.3d 970 (2d Cir.1996) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Taken together, and absent any exceptions, these two principles imply that Design, as a corporate entity, does not have standing to assert a claim resulting from an alleged harm affecting only interests pertaining to and assertable by its shareholders.

Design has not alleged any specific harm that would accrue to the corporation from the failure of the proposed COMSYS Sale.[2] In addition, the Letter of Intent (which is the sole documentary evidence of the proposed COMSYS Sale that is on the record before the Court) does not indicate that Design was a party to the proposed transaction as an intended seller or otherwise, or that the property of the corporation was an intended subject of that transaction. Addressing a principle applicable to this situation, a court in this district has stated:

> As a matter of law, purchase of a company's stock is distinct from a sale of the company's assets.... It has long been the law in New York that a corporation in respect of corporate property and rights is entirely distinct from the stockholders ... and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property. Ownership of capital stock being distinct from ownership of corporate property, it follows that the sale of such stock is not a sale of corporate property.

*New Paradigm Software Corp. v. New Era of Networks, Inc.*, No. 99 Civ. 12409, 2002 WL 31749396, *8 (S.D.N.Y. Dec.09, 2002) (internal quotation marks and citations omitted); *see also* William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 4231 (2004) ("Corpo-

---

**2.** Newmark, in his deposition, specifically avoided questions concerning whether Design, in its corporate capacity, had suffered any damages as a result of the failure of the COMSYS Sale: "Q. Who was selling the company, sir? A. I was Q. So the company wouldn't have made any more money whether it got sold or not, right? You would have made that money, right? A. Everybody would have made the money, he [Davis] would have made the money. Q. Sir answer my question? A. Everybody was sharing in the earn-up money.AA Q. Tell me what damage Design Strategy sustained by reason of the fact that you were not able to sell your stock to COMSYS? A. I am going to let the jury decide that, counselor." (Newmark Dep. Tr. at 214–215, 221, Ex. L to Benowich Decl.)

rate rights of action are distinct from those of the members or shareholders."). Therefore, there is no reason to interpret the Letter of Intent's discussion of a proposed purchase of Design's stock from its stockholders as a proposed purchase of Design corporate property, thereby implicating the corporation itself as a seller.

Responding to Defendants' argument that it lacks standing to assert a claim based on the failure of the COMSYS Sale, Design points out that the Letter of Intent "was signed not only by the individual shareholders but also by Design Strategy Corporation." (Affidavit by Jack S. Dweck in Opposition to Motions In Limine, dated November 22, 2004, ¶ 5 "Dweck Aff."). Although the President of Design, Marsh Newmark, signed the Letter in his capacity as Design's President the Letter's language strongly favors Defendants' view that "Design is a signatory to the letter of intent only for purposes of 'certain representations and warranties,'" for example, that Design "shall have made no dividend, consulting or other payment to the Sellers [in 1999]BD.'" (The IT Defendants' Reply Memorandum of Law in Further Support of their In Limine Motion to Preclude Plaintiff's Stock Sale Damages Claim, dated December 14, 2002, at 4 ("IT Defs.' Reply Mem.") (quoting Letter of Intent at 5, 4, Ex. L. to DiDomenico Aff.).) The signature block of the letter bearing the title "Sellers" contains the signatures of only the three individual shareholders, Marsh Newmark, Elliot Spicehandler and Regina Melly. The first paragraph of the Letter of Intent defines the "Sellers" as "the shareholders of Design Strategy." In addition, the Letter of Intent is explicitly

addressed only to "the Shareholders" of Design and NISI. In light of the well-established and crucial distinction between a corporation and its shareholders, the absence of any explicit mention of Design as a seller in the Letter of Intent and the clear definition of and reference to the sellers as only the shareholders make Design's position that the Letter concerned a proposed sale by Design itself untenable.[3]

Design further bases its contention that it has standing to assert damages based on the failure of the COMSYS Sale on the fact that the purchase price discussed in the Letter of Intent is based in part on Design satisfying certain conditions, such as its minimum net working capital achieving a certain figure by the closing date. (*See* Dweck Aff. ¶ 5.) The Letter defines the purchase price, however, as the "purchase price for all of the shares of Common Stock of Design Strategy," (Letter of Intent at 1, Ex. 1 to Benowich Decl.), without indicating that it extends to any Design corporate assets, such that the corporation would be an implied seller of additional interests subject to the transaction. In addition, as the IT Defendants point out, "a prospective purchaser ... would naturally be concerned with the financial condition of a company when contemplating the purchase of all of that company's stock." (IT Defs.' Reply Mem. at 4.) Moreover, the Letter explicitly distinguishes between "the Shares of Design Strategy" and "Design Strategy's assets," (Letter of Intent at 6, Ex. L to DiDomenico Aff.), thereby indicating that, had the proposed transaction included the sale of Design's corporate assets, the Letter's

---

**3.** Design phrases its claim in opposition to Defendants' motions as follows: "[F]or Defendants to suggest that Design strategy was not being sold, but that it was merely a private sale of shares of stock of Design Strategy, does not comport with the actual fact and the reality of the sale of Design Strategy."

(Dweck Aff. ¶ 7.) whether or not the Letter of Intent contemplated an sale of Design itself, however, is not relevant to the question of standing. The important point for standing purposes is whether or not Design was a party to the proposed sale such that the failure of the sale resulted in a harm to it.

drafters would have made that obligation explicit.

In sum, because Design has failed to allege any harm to the corporation itself stemming from the failure of the COMSYS Sale, and because there is no basis for interpreting the Letter of Intent concerning that sale to contemplate Design as a proposed seller of any interest Design lacks standing to enforce any rights that might stem from the failure of the COM-SYS; Sale:

## III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the motions *in limine* of Defendants Marc E. Davis, Info Technologies, Inc., Info Technologies Web Solutions, and John Goullet for an order precluding Plaintiff Design Strategies, Inc. ("Design") from asserting or presenting evidence concerning damages allegedly arising from the failure of the proposed sale of Design stock to nonparty COMSYS Information Technology Services, Inc. are granted.

**SO ORDERED.**